## RICHARD W. LeROY AND OTHERS v. SPECIAL INDEPENDENT SCHOOL DISTRICT NO. 1 OF THE CITY OF MINNEAPOLIS AND OTHERS.

172 N. W. (2d) 764.

November 28, 1969—No. 41870.

*Earl H. A. Isensee,* for appellants.

*Lindquist & Vennum, N. L. Newhall, Jr.,* and *Kenneth F. Kirwin,* for respondent school district and its board of education.

FRANK T. GALLAGHER, JUSTICE.

This is an appeal from a judgment of the District Court of Hennepin County declaring L. 1967, c. 661, and § 5 thereof, to be constitutional.

Plaintiffs, who are citizens, residents, voters, taxpayers, and owners of real property in Special Independent School District No. 1 of the city of Minneapolis (hereinafter district), com-

menced this action against defendant district and its Board of Education, the Hennepin County auditor and treasurer, and the city of Minneapolis and its Board of Estimate and Taxation (hereinafter board of estimate). The district exists under L. 1959, c. 462, as amended, as an agency of the State of Minnesota; the board of estimate is a department of the city of Minneapolis operating under the city's Home Rule Charter, separate and apart from the district. The action sought a judgment declaring that L. 1967, c. 661, and § 5 thereof are unconstitutional and restraining defendants from proceeding pursuant to certain action taken thereunder.

Chapter 661, approved May 22, 1967, provides in part:

"Sec. 6. This act shall become effective as provided in the general laws of the state at the time of its final enactment."

Three days before the approval of c. 661, L. 1967, c. 595, now Minn. St. 645.023 and 645.024, was approved. That act provides in relevant part:

"Section 1. Subdivision 1. A special law enacted pursuant to the provisions of the Constitution, Article XI, Section 2, shall become effective without the approval of any affected local government unit or group of such units in a single county or a number of contiguous counties.

\* \* \* \* \*

"Sec. 2. Section 1 [Minn. St. 645.023] does not apply to a special law which by its own terms becomes effective upon the approval of one or more affected local government units, expressed through the voters or the governing body and by such majority as the special law may direct."

Chapter 661, § 5, provides the following procedure in order to increase the mill-rate limitation for the district:

(1) Its board of education adopts a resolution setting forth both the current and the proposed mill-rate limitation, the amount of increase, and the time and place for a public hearing.

(2) Notice of the public hearing is published, setting forth

the resolution and a statement that all interested parties may appear and testify.

(3) After the hearing, the board of education adopts a resolution to establish a mill-rate limitation not exceeding that stated in the initial resolution.

(4) The new limit takes effect after 60 days unless (a) the board of education by majority vote directs that it be submitted to the voters; or (b) a certain number of registered voters petition for submission of the new limitation to the people or the board of estimate.

(5) If either of the above occurs, the board of education by resolution again establishes a new mill-rate limitation not exceeding that previously adopted, which takes effect as follows: (a) If passed by two-thirds of the board of education members, the increase takes effect to the extent determined by a cost-of-living formula; (b) to the extent the increase does not thus take effect, it takes effect only after either voter approval or board of estimate consideration. The board of education chooses between submission to the voters and submission to the board of estimate.

(6) If the board of education elects submission to the board of estimate, the latter holds a public hearing and may take such other action as it deems appropriate to determine whether the increase is reasonable. If it finds all or part to be unreasonable, it may reject the unreasonable part by resolution. The part not rejected takes effect.

In accordance with this procedure, the board of education, after an initial resolution and a public hearing, adopted (by more than two-thirds vote) a resolution calling for an increase of the mill-rate limitation for 1969 to 93.3, a 16-mill increase of which 5.8 mills was the cost-of-living increase. Certain voters submitted a petition calling for submission of the new limitation to the board of estimate or to the people. The board of estimate held the required public hearings and adopted a resolution rejecting 1 mill of the proposed increase as unreasonable.

The new mill-rate limitation of 92.3 was certified to the Hen-

nepin County auditor, to be spread upon the assessment records and certified to the Hennepin County treasurer, to cause taxes based thereon to be collected in 1969.

Plaintiffs contend that c. 661 is unconstitutional because (1) it violates the separation-of-powers doctrine; (2) it permits the board of estimate to limit the mill rate without regard to uniformity; (3) it embraces more than one subject in its title; (4) it has vested judicial power in a nonjudicial body; (5) there is no right of judicial review from the determinations of the board of estimate; (6) it is a violation of the due-process and equal-protection clauses; and (7) it was passed as a special law when a general law could have been passed. We cannot agree with plaintiffs' contentions.

It is plaintiffs' contention that because the board of estimate has been given in c. 661 the power to review the mill-rate limitation set by the board of education, the board of estimate has the power to legislate, and since it is not a part of the legislative branch of government, this delegation of power by the legislature is a violation of Minn. Const. art. 3, § 1, which provides in substance that the power of government shall be divided into three distinct departments—legislative, executive, and judicial— and that no person belonging to one shall exercise any of the powers of the other.

1. This court has upheld the unrestricted power of an independent school district to levy an unlimited tax. State v. Babcock, 87 Minn. 234, 91 N. W. 842; Oliver Iron Min. Co. v. Independent School Dist. No. 35, 155 Minn. 400, 193 N. W. 949. Since the legislature could have given the school district unlimited authority to certify taxes, it follows that the legislature does have the authority to determine the type of limitation, if any, to be imposed upon the power of a school district to certify taxes. We are therefore of the opinion that granting the board of estimate the power to reduce the mill-rate increase was a valid exercise of the legislative right to limit the school district's power to tax.

2. We are also of the opinion that there is no merit to plain-

tiffs' contention that c. 661 violates the constitutional mandate that the legislature establish and maintain a uniform system of schools. Plaintiffs argue that because the board of estimate has the power to veto a mill-rate increase proposed by the board of education, the board of estimate thus can effectively regulate the school system in Minneapolis without regard to uniformity around the state. Again we are of the opinion that this is a legitimate limitation placed on the board of education's power to set a mill rate, and it is constitutional.

3. Plaintiffs argue that the title of c. 661 is unconstitutional because it embraces more than one subject. The title of c. 661 is:

"An act relating to the special district No. 1 of the city of Minneapolis; amending Laws 1959, Chapter 462, as amended by Laws 1961, Chapter 565 and Laws 1963, Chapter 645."

This title in our judgment is well within the requirements of Minn. Const. art. 4, § 27. The purpose of this section of the constitution is the prevention of deception as to the nature and subject of legislative enactments.

"* * * All that is necessary to establish compliance with this constitutional provision is that a statute must embrace one general subject under which all matters treated therein would logically fall." State ex rel. McGregor v. Rigg, 260 Minn. 141, 147, 109 N. W. (2d) 310, 314.

The title to c. 661 embraces the general subject of the special school district No. 1 of the city of Minneapolis, and all of the provisions of c. 661 are certainly germane to this general subject.

4. It is further urged by plaintiffs that c. 661 is unconstitutional because it confers a judicial function (the power to veto as much of the mill-rate increase proposed by the board of education as is found to be unreasonable) on a nonjudicial body (the board of estimate).

A recognized test of whether a function is judicial is whether it is one that courts have historically been accustomed to per-

form. State ex rel. McGinnis v. Police Civil Service Comm. 253 Minn. 62, 91 N. W. (2d) 154. Courts have not traditionally had the function of determining the amount of taxes that should be certified by school districts or whether the amount certified is reasonable. It is our opinion that the function imposed upon the board of estimate is not judicial, and that c. 661 does not violate the constitutional provision vesting judicial power in the courts.

5. Plaintiffs also argue that c. 661 is unconstitutional because it does not afford them the right of judicial review of a determination made by the board of estimate. We cannot agree. The board of estimate is only authorized to reject any part of the mill-rate increase which is unreasonable; it is not authorized to increase the mill rate. As was said earlier, this is a valid limitation placed upon the power of the school board to set the mill rate. Clearly, if either the board of education or the board of estimate violated the law or acted arbitrarily or capriciously, such acts would be subject to judicial review.

6. Chapter 661 does not violate Minn. Const. art. 1, § 7, and U. S. Const. Amend. XIV by depriving plaintiffs of their property without due process of law and equal protection of the law in that there is not a mill-rate limitation which may be imposed similar to that provided in other school districts in the State of Minnesota nor a provision in c. 661 for judicial review. In support of this claim, plaintiffs raise only one argument not already raised—that Minn. St. 275.12, which sets the mill-rate limitation for other school districts, does not apply to the Minneapolis district. However, it is clear under Minn. St. 645.31 and well-established rules of statutory construction that § 275.12 does apply to the Minneapolis district.

7. Finally, plaintiffs claim that c. 661 violates the provisions of Minn. Const. art. 4, §§ 33 and 34, in that since it is a special law it is necessary that it be passed in accordance with Minn. Const. art. 11, § 2, and c. 661 was not so passed. Minn. Const. art. 11, § 2, provides in essence that special laws shall become effec-

tive only after local approval *unless otherwise provided by general law*. Three days before c. 661 was approved, L. 1967, c. 595, § 1, subd. 1, now Minn. St. 645.023, subd. 1, which provides that special laws enacted pursuant to the provisions of art. 11, § 2, shall become effective without local approval, was approved. Chapter 661 was passed in accordance with the provisions of art. 11, § 2.

Affirmed.

MR. JUSTICE ROGOSHESKE took no part in the consideration or decision of this case.