FRANK O. ALFORD, WILKIE P. BEATTY, AS EXECUTRIX OF THE ESTATE OF PAUL B. BEATTY, CARSON INSURANCE AGENCY, INC., PATRICIA A. EDLUND, STANLEY EDLUND, JAMES M. GILFILLIN, LARRY G. GOLDBERG, RAQUEL T. GOLDBERG, BETTY F. RHYNE, ROBERT R. RHYNE AND NORMAN V. SWENSON, DERIVATIVELY IN THE RIGHT OF ALL AMERICAN ASSURANCE COMPANY, PLAINTIFFS v. ROBERT T. SHAW, AMERICAN COMMONWEALTH FINANCIAL CORPORATION, GREAT COMMONWEALTH LIFE INSURANCE COMPANY, ICH CORPORATION, CHARLES E. BLACK, S. J. CAMPISI, ROY J. BROUSSARD, TRUMAN D. COX, FRED M. HURST, C. FRED RICE AND PEGGY P. WILEY, DEFENDANTS, AND ALL AMERICAN ASSURANCE COMPANY, BENEFICIAL PARTY

No. 132PA85

(Filed 28 July 1987)

1. **Corporations § 6— shareholders' derivative action—special litigation committee—judicial inquiry into recommendation**

   A special litigation committee's decision to terminate a minority shareholders' derivative action against corporate directors is not binding upon the courts; rather, there must be a judicial inquiry on the merits of the special litigation committee's recommendation.

2. **Corporations § 6— shareholders' derivative action—excusal of demand on corporate directors**

   Plaintiffs' allegations in a shareholders' derivative action that defendant shareholders, who were responsible for certain fraudulent transactions, used their control of the corporation to nominate and elect defendant directors and that defendant directors permitted the fraudulent transactions to occur established a demand-excused situation and sufficiently complied with the procedural requirement of N.C.G.S. § 55-55(b).

3. **Corporations § 6— disposition of shareholder derivative suits—necessity for court approval**

   Under N.C.G.S. § 55-55(c), court approval is required for the disposition of all shareholder derivative suits, even where the directors are not charged with

fraud or self-dealing, or where the plaintiff and the board of directors agree to discontinue, dismiss, compromise, or settle the lawsuit.

4. **Corporations § 6— stockholders' derivative action—self-dealing by directors—burden of proof—report of special litigation committee**

> When N.C.G.S. §§ 55-55 and 55-30(b)(3) are read *in pari materia*, they indicate that when a stockholder in a derivative action seeks to establish self-dealing on the part of a majority of the board of directors, the burden should be upon those directors to establish that the transactions complained of were just and reasonable to the corporation when entered into or approved. The fact that a special litigation committee appointed by those directors charged with self-dealing recommends that the action should not proceed, while carrying weight, is not binding upon the trial court; rather, the court must make a fair assessment of the report of the special committee, along with all the other facts and circumstances in the case, in order to determine whether the defendants will be able to show that the transaction complained of was just and reasonable to the corporation.

Justice MITCHELL did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

Justice WEBB dissenting.

ON plaintiffs' petition for rehearing pursuant to Rule 31(a) of the North Carolina Rules of Appellate Procedure. Reheard in the Supreme Court 16 April 1987.

*Petree Stockton & Robinson, by Ralph M. Stockton, Jr. and Daniel R. Taylor, Jr., for appellant All American Assurance Company, respondent on rehearing.*

*Adams, Kleemeier, Hagan, Hannah & Fouts, by Daniel W. Fouts and Peter G. Pappas, for appellants Charles E. Black, S. J. Campisi, Roy J. Broussard, Truman D. Cox, Fred M. Hurst, and Peggy P. Wiley, respondents on rehearing.*

*Cansler & Lockhart, P.A., by Thomas Ashe Lockhart and Bruce M. Simpson, for appellees, petitioners on rehearing.*

MARTIN, Justice.

[1] The sole issue raised by this appeal is whether a special litigation committee's decision to terminate plaintiff minority shareholders' derivative action against defendant corporate directors is binding upon the courts. In our earlier opinion in this case, 318 N.C. 289, 349 S.E. 2d 41 (1986), we stated that the "business

judgment rule," a doctrine shielding the good faith actions of disinterested corporate directors from judicial inquiry on the merits, required deference to the decisions of independent special litigation committees. Consequently we held that summary judgment had been properly granted for defendants. Upon this rehearing we have elected to reconsider our prior holding and to redetermine the question raised by the appeal.

We withdraw our prior decision, reported in 318 N.C. 289, 349 S.E. 2d 41 (1986), and treat the case before us as a hearing de novo on the issue raised. *See Trust Co. v. Gill, State Treasurer,* 293 N.C. 164, 237 S.E. 2d 21 (1977); *Clary v. Board of Education,* 286 N.C. 525, 212 S.E. 2d 160 (1975).

Briefly summarized, the record discloses the following: In response to charges of mismanagement asserted by plaintiff minority shareholders, the board of directors of All American Assurance Company (AAA) voted to appoint a committee to conduct an investigation. The board then elected Marion G. Follin, a retired insurance executive, and Frank M. Parker, a former judge of the North Carolina Court of Appeals, to board membership and designated them as a special investigative committee. The committee was authorized to determine whether it would be in the best interest of AAA and its shareholders to initiate legal action against those implicated in any wrongdoing uncovered by the investigation.

Before the committee had completed its investigation, plaintiffs filed a shareholders' derivative action in superior court, naming as defendants the controlling shareholders of AAA and a majority of its directors. The complaint alleged inter alia that in a series of transactions involving corporations affiliated with AAA, defendants had violated fiduciary obligations by engaging in a pattern of fraud, self-dealing, and negligent acquiescence which amounted to a "looting" of corporate assets for defendants' own benefit.

Upon completion of its investigation, the committee filed a report in the trial court recommending that the majority of plaintiffs' claims be dismissed with prejudice and that two remaining claims be settled in accordance with an attached settlement agreement. Based on the committee's report, defendants moved for summary judgment and approval of the settlement agreement.

Alford v. Shaw

The trial court held that the business judgment rule controlled the disposition of the case and granted the motions. The Court of Appeals reversed, 72 N.C. App. 537, 324 S.E. 2d 878 (1985), holding that corporate directors who are parties to a derivative action may not confer upon a special committee the power to bind the corporation as to the derivative litigation. We affirm the Court of Appeals, subject to the modifications discussed below.

We deem it unnecessary for the purposes of this opinion to review the development of the basic principles of derivative litigation. For a general discussion of derivative suits, see D. DeMott, *Shareholder Derivative Actions Law and Practice* §§ 1:01-:05 (1987); R. Robinson, *North Carolina Corporate Law and Practice* §§ 14-1, -2 (3d ed. 1983).

In determining the proper role, if any, of special corporate litigation committees in the termination of derivative shareholders' actions, three basic approaches have been adopted by other jurisdictions:

1. *Auerbach.* In *Auerbach v. Bennett*, 47 N.Y. 2d 619, 393 N.E. 2d 994, 419 N.Y.S. 2d 920 (1979), the Court of Appeals of New York extended the business judgment rule to the decisions of special litigation committees, precluding judicial review of the merits of those decisions. Under *Auerbach*, judicial review of committee decisions is limited to the issues of good faith, independence, and sufficiency of the investigation.

2. *Miller.* In *Miller v. Register and Tribune Syndicate, Inc.*, 336 N.W. 2d 709 (Iowa 1983), the Iowa Supreme Court adopted a prophylactic rule as a means of circumventing the "structural bias" inherent in the committee appointment process. Under *Miller*, directors charged with misconduct are prohibited from participating in the selection of special litigation committees.

3. *Zapata.* In *Zapata Corp. v. Maldonado*, 430 A. 2d 779 (Del. 1981), the Delaware Supreme Court promulgated a two-step test for judicial review of the decisions of special litigation committees. The first step requires an inquiry as to the independence, good faith, and investigative techniques of the committee, expressly placing the burden of proof as to these matters on the corporation. The second step, as a safeguard against structural bias, provides for an additional, discretionary level of scrutiny on

the merits in which trial courts may exercise their own "independent business judgment" in deciding whether derivative actions should be dismissed. The report of the special litigation committee may be considered along with all the other evidence before the court.

The recent trend among courts which have been faced with the choice of applying an *Auerbach*-type rule of judicial deference or a *Zapata*-type rule of judicial scrutiny has been to require judicial inquiry on the merits of the special litigation committee's report. *See* Note, *Derivative Actions—Presumed Good Faith Deliberations By Special Litigation Committees: A Major Hurdle For Minority Shareholders—Alford v. Shaw*, 22 Wake Forest L. Rev. 127, 139-44 (1987).

In our previous decision in this case, we applied a modified *Auerbach* rule. We interpret the trend away from *Auerbach* among other jurisdictions as an indication of growing concern about the deficiencies inherent in a rule giving great deference to the decisions of a corporate committee whose institutional symbiosis with the corporation necessarily affects its ability to render a decision that fairly considers the interest of plaintiffs forced to bring suit on behalf of the corporation. *See generally* Cox & Munsinger, *Bias in the Boardroom: Psychological Foundations and Legal Implications of Corporate Cohesion*, 48 Law and Contemporary Problems, Summer 1985 at 83 (1985). Such concerns are legitimate ones and, upon further reflection, we find that they must be resolved not by slavish adherence to the business judgment rule, but by careful interpretation of the provisions of our own Business Corporation Act. We conclude from our analysis of the pertinent statutes that a modified *Zapata* rule, requiring judicial scrutiny of the merits of the litigation committee's recommendation, is most consistent with the intent of our legislature and is therefore the appropriate rule to be applied in our courts. While we affirm the holding of the Court of Appeals reversing summary judgment for defendants, we reject that court's application of the *Miller* rule.

In 1973 the General Assembly enacted N.C.G.S. § 55-55 which expressly authorizes shareholders' derivative actions and prescribes the rules governing all such actions brought in the state courts of North Carolina. Section 55-55 contains liberal pro-

visions which do not impose many of the restrictions upon derivative actions encountered in other jurisdictions. The legislature has placed the minority shareholder in North Carolina "in a more favorable position to seek redress on behalf of his corporation for wrongs allegedly done to it by the majority shareholders, the directors and officers, or outside third parties." R. Robinson, *North Carolina Corporation Law and Practice* § 14-1 at 214 (3d ed. 1983).[1]

This policy of protecting minority shareholders is manifested by section 55-55(c), which states that a shareholder's derivative action

> shall not be discontinued, dismissed, compromised or settled without the approval of the court. If the court shall determine that the interest of the shareholders or any class or classes thereof, or of the creditors of the corporation, will be substantially affected by such discontinuance, dismissal, compromise or settlement, the court, in its discretion, may direct that notice, by publication or otherwise, shall be given to such shareholders or creditors whose interests it determines will be so affected. If notice is so directed to be given, the court may determine which one or more of the parties to the action shall bear the expense of giving the same, in such amount as the court shall determine and find to be reasonable in the circumstances, and the amount of such expense shall be awarded as costs of the action.

The plain language of the statute requires thorough judicial review of suits initiated by shareholders on behalf of a corporation: the court is directed to determine whether the interest of any shareholder will be substantially affected by the discontinuance, dismissal, compromise, or settlement of a derivative suit. Although the statute does not specify what test the court must

---

1. While affording minority stockholders' bona fide derivative suits greater protections under the statutory provisions already discussed, the legislature was not unmindful of corporate concerns about a possible proliferation of meritless "strike" suits. N.C.G.S. § 55-55(e) states that

> [i]n any [derivative] action the court, upon final judgment and a finding that the action was brought without reasonable cause, may require the plaintiff or plaintiffs to pay to the defendant or defendants the reasonable expenses, including attorneys' fees, incurred by them in the defense of the action.

apply in making this determination, it would be difficult for the court to determine whether the interests of shareholders or creditors would be substantially affected by such discontinuance, dismissal, compromise, or settlement without looking at the proposed action substantively.

To make the required assessment under section 55-55, the court must of necessity evaluate the adequacy of materials prepared by the corporation which support the corporation's decision to settle or dismiss a derivative suit along with the plaintiff's forecast of evidence. If it appears likely that plaintiff could prevail on the merits, but that the amount of the recovery would not be sufficient to outweigh the detriment to the corporation, the court could still allow discontinuance, dismissal, compromise, or settlement.

Although the recommendation of the special litigation committee is not binding on the court, in making this determination the court may choose to rely on such recommendation. To rely blindly on the report of a corporation-appointed committee which assembled such materials on behalf of the corporation is to abdicate the judicial duty to consider the interests of shareholders imposed by the statute. This abdication is particularly inappropriate in a case such as this one, where shareholders allege serious breaches of fiduciary duties owed to them by the directors controlling the corporation.

[2]    Section 55-55(c) is a broadening of the *Zapata* approach. As in other jurisdictions, exhaustion of intracorporate remedies (that is, "demand") is a procedural prerequisite to the filing of a derivative action in North Carolina. Section 55-55(b), codifying prior case law, makes this explicit:

> The complaint shall allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and the reasons for his failure to obtain the action or for not making the effort.

An equitable exception to the demand requirement may be invoked when the directors who are in control of the corporation are the same ones (or under the control of the same ones) as were initially responsible for the breaches of duty alleged. In such case,

the demand of a shareholder upon directors to sue themselves or their principals would be futile and as such is not required for the maintenance of the action. *Hill v. Erwin Mills, Inc.*, 239 N.C. 437, 80 S.E. 2d 358 (1954); *Swenson v. Thibaut*, 39 N.C. App. 77, 250 S.E. 2d 279 (1978), *cert. denied and appeal dismissed*, 296 N.C. 740, 254 S.E. 2d 181 (1979). Here plaintiffs alleged that defendant shareholders, who were responsible for the fraudulent transactions, used their control of AAA to nominate and elect defendant directors and that defendant directors permitted the fraudulent transactions to occur. This establishes a demand-excused situation and sufficiently complies with the procedural requirement of section 55-55(b).

[3] The *Zapata* Court limited its two-step judicial inquiry to cases in which demand upon the corporation was futile and therefore excused. However, we find no justification for such limitation in our statutes. The language of section 55-55(c) is inclusive and draws no distinctions between demand-excused and other types of cases. *Cf.* ALI Principles of Corporate Governance: Analysis and Recommendations § 7.08 & Reporter's Notes 2 & 4 at 135-139 (Council Draft No. 6, Oct. 10, 1986) (issue of demand of minimal importance in determining scope of review; demand-excused/demand-required distinction not determinative). Thus, court approval is required for disposition of *all* derivative suits, even where the directors are not charged with fraud or self-dealing, or where the plaintiff and the board agree to discontinue, dismiss, compromise, or settle the lawsuit.

Another expression of legislative intent may be found in N.C.G.S. § 55-30 relating to a director's adverse interest. It provides, inter alia:

> (b) No corporate transaction in which a director has an adverse interest is either void or voidable, if:
>
> > (3) The adversely interested party proves that the transaction was just and reasonable to the corporation at the time when entered into or approved. In the case of compensation paid or voted for services of a director as director or as officer or employee the standard of what is "just and reasonable" is what would be paid for such services at arm's length under competitive conditions.

[4] When N.C.G.S. §§ 55-55 and 55-30(b)(3) are read in pari materia, they indicate that when a stockholder in a derivative action seeks to establish self-dealing on the part of a majority of the board, the burden should be upon those directors to establish that the transactions complained of were just and reasonable to the corporation when entered into or approved. The fact that a special litigation committee, appointed by those directors charged with self-dealing, recommends that the action should not proceed, while carrying weight, is not binding upon the trial court. Rather, the court must make a fair assessment of the report of the special committee, along with all the other facts and circumstances in the case, in order to determine whether the defendants will be able to show that the transaction complained of was just and reasonable to the corporation. If this appears evident from the materials before the court, then in a proper case summary judgment may be allowed in favor of the defendants.

Upon remand plaintiffs shall be permitted to develop and present evidence on this issue, such as: (1) that the committee, though perhaps disinterested and independent, may not have been *qualified* to assess intricate and allegedly false tax and accounting information supplied to it by those within the corporate structure who would benefit from decisions not to proceed with litigation, (2) that, in fact, false and/or incomplete information was supplied to the committee because of the nonadversarial way in which it gathered and evaluated information, and therefore (3) in light of these and other problems which arise from the structural bias inherent in the use of the board-appointed special litigation committees, that the committee's decision with respect to the litigation eviscerates plaintiffs' opportunities as minority shareholders to vindicate their rights under North Carolina law. *Cf.* Dent, *The Power of Directors to Terminate Shareholder Litigations: The Death of The Derivative Suit*, 75 Nw. U.L. Rev. 96 (1981).

The trial court in this case adopted the erroneous

opinion that the business judgment rule controls the disposition of this case and, therefore, that *the only issues before it are whether the Special Committee was composed of disinterested, independent directors who acted in good faith, and whether the scope of the investigation and the procedures adopted and followed were appropriate.*

(Emphasis added.) By so doing, the trial court failed to fulfill its duties under N.C.G.S. § 55-55(c) and the rationale of *Zapata*.

In view of the foregoing, we withdraw our decision reported in 318 N.C. 289, 349 S.E. 2d 41 (1986). That decision is no longer authoritative and this opinion now becomes the law of the case. *See Investment Properties v. Allen*, 283 N.C. 277, 196 S.E. 2d 262 (1973).

The decision of the Court of Appeals as modified by this opinion is affirmed. This cause is remanded to the Court of Appeals with direction to remand to the Superior Court of Mecklenburg County for further proceedings not inconsistent with this opinion.

Modified and affirmed.

Justice MITCHELL did not participate in the consideration or decision of this case.

Justice MEYER dissenting.

I dissent. My position is accurately reflected in the original opinion of the Court, reported at 318 N.C. 289, 349 S.E. 2d 41 (1986).

Justice WEBB dissenting.

I dissent. I do not disagree with the substantive matter in the majority opinion. This Court, however, has decided this case in a previous opinion which considered all matters discussed in the majority opinion filed today. I believe we are mistaken in changing an opinion so recently filed. I vote not to reconsider the case.