**James H. BLACK, Appellant,**

v.

**NuAIRE, INC., Turnpike Investment, etc., et al., Respondents.**

**No. C3-88-219.**

Court of Appeals of Minnesota.

June 21, 1988.

Review Denied Aug. 24, 1988.

204

Ernest A. Lindstrom, Ernest A. Lindstrom, Ltd., Robert W. Gislason, Gislason, Martin & Varpness, Edina, for James H. Black.

J. Dixon Tews, John Paul Martin, Petersen, Tews & Squires, St. Paul, NuAire, Inc.

Richard Ihrig, Michael D. Olafson, Lindquist & Vennum, Minneapolis, for Turnpike Inv.

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 2.

Heard, considered and decided by CRIPPEN, P.J., and LANSING and SCHULTZ *, JJ.

## OPINION

HAROLD W. SCHULTZ, Acting Judge.

Appellant James H. Black appeals a judgment dismissing his shareholder derivative action against respondent NuAire, Inc. and individual respondents who are current or former directors and/or employees of NuAire. These individual respondents include Max Peters, Myrtle Peters, James Peters, Richard Peters, Charles Townsend and Turnpike Investment, a partnership leasing equipment to NuAire and consisting of Max, James and Richard Peters.[1]

Appellant challenges the constitutionality of Minn. Stat. § 302A.243 (1986), which authorizes a corporation's board of directors to appoint a committee of disinterested persons to determine whether the corporation should pursue a shareholder derivative claim. Alternatively, appellant claims the trial court erred in interpreting that statute and dismissing his action.

Appellant also appeals an order granting him only partial attorney fees. Respondent NuAire and the individual respondents each filed a notice of review challenging the partial grant of attorney fees to appellant and the denial of costs and attorney fees to NuAire. We affirm.

## FACTS

Respondent NuAire designs, manufactures, and sells air filtering equipment used for medical and industrial research. NuAire was incorporated in September 1971. NuAire's sales have grown from $33,163 in its first year to $10,500,000 in 1987.

Appellant is one of eight NuAire shareholders. He owns 2.63% of the shares. Peters Investment Company, a partnership consisting of Max Peters and his sons,

1. An additional individual defendant below, William Kyostia, is not represented by counsel for NuAire or the individual respondents, and therefore is not a respondent in this appeal.

owns 53.53% of the stock. The next largest shareholder, owning 27.29% of the shares, is Kent Larson, who has also filed an action against NuAire. Larson's action is not a derivative action, but one to dissolve NuAire, and his counsel is the same counsel representing appellant.

Appellant initiated this shareholder derivative action in May 1983 and amended his complaint in August 1986. His allegations included: (1) wrongful hiring of relatives; (2) excessive salaries and business expenses; (3) wrongful Turnpike Investment transactions; (4) illegal diversion of NuAire funds; (5) secrecy and concealment of unlawful acts; (6) failure to pay dividends; and (7) excessive fringe benefits, which included an interest-free loan, insurance, car expenses, employee profit sharing, and Max Peters' deferred compensation agreement.

In response to appellant's action, in February 1985 NuAire's board of directors established a special committee consisting of director William R. Priedeman, not a party to appellant's action, to determine whether it was in the best interests of the corporation and its shareholders to appoint, pursuant to Minn.Stat. § 302A.243, a committee of disinterested persons to investigate appellant's claims. Priedeman reported to NuAire's board that the appointment of a committee of disinterested persons would best serve the interests of NuAire and its shareholders. Priedeman appointed John F. Finn and William F. Ogden, Jr. to serve as the committee of disinterested persons.

Both Finn and Ogden are attorneys with substantial business experience. Before being appointed to the committee of disinterested persons, neither Finn nor Ogden had any dealings with NuAire, nor did they know Peters or any of the other individual respondents.

Appellant initially moved for an order to vacate the appointment of the committee. Appellant challenged the constitutionality of section 302A.243, alleging that the statute violated his due process and equal protection rights. By order filed January 8, 1986, the court denied appellant's motion to vacate the appointment of the committee.

The court rejected appellant's constitutional challenge, stating:

> The disinterested persons committee's decision is subject to the Court's review to ensure the decision was made independently and objectively. Therefore, the Statute Section 302A.243 does not impair [appellant's] due process or equal protection rights.

The court further found the disinterested committee was duly appointed pursuant to section 302A.243.

In October 1985, the committee commenced its investigation. The committee requested the participation of appellant and his attorneys, but they refused to meet with the committee or provide any information. The committee gathered information from court records, corporate records, deposition testimony, and the testimony and records of NuAire's outside accountants and auditors. The committee also received information from NuAire's bank and received reports from outside experts, including Arthur Young & Co., regarding several of appellant's allegations.

The committee found only one of appellant's claims to have merit, stating:

> There is only one charge in the amended complaints that appears to hold out the prospect of significant benefit to the corporation if its damage allegations are borne out. The Committee believes that the deferred compensation agreement entered into with Max Peters has a definite damage potential.

The deferred compensation agreement was unfunded and provided for payments to Peters in the event he retired or became disabled, and lesser payments to Peters' wife if she survives him. Appellant's expert alleged this agreement would cost the corporation over $5,000,000.

The committee explained its reasons for finding merit to appellant's claim regarding the deferred compensation agreement:

> The justification for this unusual contract appears to be that Max Peters' skills have been by far the greatest contribution to the company's growth and that those skills were significantly under-

compensated for during the company's early years. The Committee finds that these reasons, while undoubtedly true, are not sufficient to justify the crippling effect that the funding of the contract obligations could have on the company after Max Peters' retirement or disability. This is especially true because of the adverse effect that either disability or retirement of Max Peters would be likely to have on NuAire's leadership and profits thereafter.

Regarding appellant's remaining allegations, the committee stated:

The Committee has found no substantiation or reasonable justification for other charges in the amended complaints and so concludes they do not justify litigation.

Further prosecution by NuAire would, in the Committee's judgment, have minuscule prospects of monetary recovery, especially when weighed against the attorney fees that would have to be paid. Furthermore the disruption of the company's operations and management that would be involved in pursuing further such charges would, without reasonable justification, be clearly detrimental to the corporation and the shareholders and unfair to the company's management defendants.

The committee concluded that if the deferred compensation agreement were rescinded, then NuAire's board should cause appellant's action to be dismissed. Pursuant to the committee's directives, NuAire's board of directors rescinded the deferred compensation agreement. The directors also determined NuAire should cause the dismissal of the action brought by appellant on behalf of NuAire.

In December 1986, appellant moved for partial summary judgment to nullify the deferred compensation agreement and for interim attorney fees. In response, NuAire filed a motion to dismiss appellant's action and also moved for an award of its costs, disbursements, and attorney fees.

On January 5, 1987, the court granted NuAire's motion for dismissal. The court relied on the previous January 8, 1986 order determining Minn.Stat. § 302A.243 does not impair appellant's due process or equal protection rights and that the committee was duly appointed under that statute. The court determined the only issues before it were whether the committee members were disinterested and conducted their investigation in good faith. Appellant did not allege any facts challenging the interest or good faith conduct of the committee.

The court specifically found the committee members were disinterested within the meaning of section 302A.243. The court further stated:

[T]he Committee has issued an exhaustive and detailed report covering every aspect of [appellant's] suit. In reaching its determinations, the Committee followed a lengthy process that was hampered only by [appellant's] refusal to participate, despite the Committee's invitation to do so. On the basis of the record before it, this Court is compelled to find that the Committee members acted in good faith.

The court denied appellant's motion to nullify the deferred compensation agreement because that motion was moot by virtue of the agreement's rescission. The court reserved ruling on the parties' respective motions for attorney fees.

A hearing on the attorney fees motions was held in April 1987. Appellant sought an award from NuAire for $7,130 in C.P.A. costs, $3,488.73 in other costs and $144,500 in attorney fees, totalling $155,118.73. Appellant based his request on the substantial benefit conferred to NuAire through his action. NuAire requested an award of $223,251.30 in attorney fees and costs under Minn.Stat. § 549.21 (1986) for claims allegedly brought in bad faith. The court disagreed with respondents and denied their motion. The court granted appellant's motion for his costs but reduced his attorney fees award to $70,000, totalling $80,618.73. Judgment was entered accordingly and this appeal followed.

Prior to oral argument, appellant moved this court to strike NuAire's brief on appeal. Appellant claimed NuAire's participation should not be allowed because

NuAire is only a nominal defendant and neutral party while this shareholder's derivative action is pending. At the hearing, we denied appellant's motion to strike NuAire's brief because of NuAire's direct participation throughout the proceedings below and because it was upon NuAire's motion that the trial court dismissed appellant's action, resulting in this appeal. By order dated April 19, 1988, we deferred final decision on appellant's motion to strike NuAire's brief and now restate our ruling and reasoning at oral argument, allowing NuAire to participate as a respondent under Minn.R.Civ.App.P. 143.01.

### ISSUES

1. Does Minn.Stat. § 302A.243 (1986) violate the United States and Minnesota Constitutions?

2. Did the trial court err in interpreting section 302A.243 and dismissing appellant's shareholder derivative action?

3. Did the trial court abuse its discretion by awarding appellant partial attorney fees?

4. Did the trial court abuse its discretion by refusing to award respondent costs and attorney fees under Minn.Stat. § 549.21 (1986)?

### ANALYSIS

■ 1. Minn.Stat. § 302A.243 (1986) provides:

> Unless prohibited by the articles or bylaws, the board may establish a committee composed of two or more disinterested directors or other disinterested persons to determine whether it is in the best interests of the corporation to pursue a particular legal right or remedy of the corporation and whether to cause the dismissal or discontinuance of a particular proceeding that seeks to assert a right or remedy on behalf of the corporation. For purposes of this section, a director or other person is "disinterested" if the director or other person is not the owner of more than one percent of the outstanding shares of, or a present or former officer, employee, or agent of, the corporation or of a related corporation and has not been made or threatened to be made a party to the proceeding in question. The committee, once established, is not subject to the direction or control of, or termination by, the board. A vacancy on the committee may be filled by a majority vote of the remaining members. The good faith determinations of the committee are binding upon the corporation and its directors, officers, and shareholders. The committee terminates when it issues a written report of its determinations to the board.

*Id.* This statute covers a new area of law, not referenced in earlier Minnesota statutes or case law. 1981 Minn. Laws ch. 270, § 43; Minn.Stat.Ann. § 302A.243, reporter's notes (West 1985). According to the reporter's notes, section 302A.243 specifically authorizes the appointment of and validates the results reached in good faith by a committee composed of disinterested persons formed to determine whether the interests of the corporation will be served by a particular suit on its behalf. Minn. Stat.Ann. § 302A.243, reporter's notes (West 1985); *see also Singer v. Allied Factors, Inc.*, 216 Minn. 443, 446, 13 N.W. 2d 378, 380 (1944) (in representative action by stockholder in corporation's behalf, cause of action and any recovery belong to corporation to exclusion of stockholder). The purpose of section 302A.243 is to grant corporations the ability to respond effectively to the potential abuses of strike suits, in which a single dissenting shareholder, owning only one share of stock, may file a derivative suit for its nuisance value alone. *See id.*, reporter's notes; *see generally Minnesota Business Corporation Act: Greater Freedom for Corporations*, 66 Minn.L.Rev. 1033, 1051–60 (1982).

■ In cases that challenge the constitutionality of a statute, the law is presumed to be constitutional unless its invalidity is clear or it is shown beyond a reasonable doubt to violate the constitution. *Head v. Special School District No. 1*, 288 Minn. 496, 505–06, 182 N.W.2d 887, 893–94 (1970), *cert. denied*, 404 U.S. 886, 92 S.Ct. 196, 30 L.Ed.2d 168 (1971). Appellant claims application of Minn.Stat. § 302A.243

authorizing NuAire directors to appoint a disinterested committee to determine the merits of his allegations (1) deprives him of property without due process of law in violation of U.S. Const. amend. XIV, § 1 and Minn. Const. art. 1, § 7; (2) abrogates his right to redress an injury or wrong guaranteed under Minn. Const. art. 1, § 8; and (3) improperly confers a judicial function onto a corporation in violation of the separation of government powers doctrine under Minn. Const. art. III, § 1.

We find appellant's constitutional claims without merit. First, appellant lacks the requisite property interest to invoke a due process claim. *See Singer*, 216 Minn. at 446, 13 N.W.2d at 380 (recovery in shareholder derivative action belongs to corporation, not shareholder); *see also Lewis v. Anderson*, 615 F.2d 778, 784 (9th Cir.1979), *cert. denied*, 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980) (in derivative action, shareholders' due process claim frivolous because shareholders have no compensable property right at stake).

Second, Minn.Stat. § 302A.243 does not abrogate appellant's remedy guaranteed under Minn. Const. art. I, § 8 because that section of our constitution protects common law remedies and appellant's remedy of a derivative action under common law and section 302A.243 remains the same: it belongs to the corporation. *Singer*, 216 Minn. at 446, 13 N.W.2d at 380. *Compare Haney v. International Harvester Co.*, 294 Minn. 375, 383, 201 N.W.2d 140, 145 (1972) (worker's compensation statute indirectly abrogated third party's common law right to contribution). Section 302A.243 does subject a derivative action to procedural regulations, which are properly within a state's plenary power to impose on this type of litigation. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 549–50, 69 S.Ct. 1221, 1227, 93 L.Ed. 1528 (1949). Further, any personal claims appel-

lant may have against NuAire or its directors are not affected by Minn.Stat. § 302A.243, which applies only to "legal rights and remedies of the corporation." *Id.*

■ Third, appellant's separation of powers argument fails because the authority to decide whether to pursue a cause of action on a corporation's behalf belongs to the corporation and therefore is not a judicial function. *See Singer*, 216 Minn. at 445, 13 N.W.2d at 390 (among powers of corporation "is that of suing and defending in its own name"); *LeRoy v. Special Independent School District No. 1*, 285 Minn. 236, 241–42, 172 N.W.2d 764, 768 (1969) (test of judicial function is whether it is one courts have historically been accustomed to perform).[2]

2. Appellant claims the trial court erred by interpreting Minn.Stat. § 302A.243 to limit the court's inquiry to whether the committee members were disinterested and conducted their investigation in good faith. Specifically, appellant argues the trial court erred in failing to review the merits of the committee's recommendation.

Appellant relies on *Alford v. Shaw*, 320 N.C. 465, 358 S.E.2d 323 (1987), where the North Carolina Supreme Court held:

> [J]udicial scrutiny of the merits of a litigation committee's recommendation, is most consistent with the intent of our legislature and is therefore the appropriate rule to be applied in our courts.

*Id.* at 469, 358 S.E.2d at 326. The statute at issue there, however, expressly provided dismissal of a shareholder's derivative action requires "approval of the court." N.C. G.S. § 55-55(c) (1973). We find no such provision in Minn.Stat. § 302A.243.

■ We interpret section 302A.243 to preclude our courts from reviewing the merits of a recommendation to dismiss a

2. Although not a constitutional argument, appellant also argues section 302A.243 interferes with the courts' power to grant equitable relief under Minn.Stat. § 302A.467. We find no conflict between these two statutes. Section 302A.243 provides an intra-corporate mechanism for the determination of whether it is in the corporation's best interest to pursue a shareholder derivative action. In the event an action has been pursued, section 302A.467 allows a court to fashion equitable remedies. We similarly find no conflict between section 302A.243 limiting a shareholder's rights when acting on a corporation's behalf and section 302A.751 broadening a shareholder's rights when individually seeking to dissolve a corporation.

shareholder's derivative action when that recommendation is made by a disinterested committee conducting its investigation in good faith. Our interpretation is in line with other jurisdictions with similar statutes extending the business judgment rule to preclude judicial review of a corporate committee's decision not to pursue a shareholder derivative action. *See Abbey v. Control Data Corp.*, 603 F.2d 724 (8th Cir.1979), *cert. denied*, 444 U.S. 1017, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980) (construing Delaware law); *Lewis*, 615 F.2d at 780 (construing California law); *Auerbach v. Bennett*, 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979).

■ The business judgment rule, in general, vests responsibility for decision making in the corporation's board of directors and precludes stockholders from disrupting the board's decision through derivative actions where the board has determined a particular action is not in the corporation's best interests. *See Abbey*, 603 F.2d at 727. The long-standing business judgment rule was early applied to litigation decisions by Justice Brandeis in *United Copper Securities Co. v. Amalgamated Copper Co.*, 244 U.S. 261, 37 S.Ct. 509, 61 L.Ed. 1119 (1917):

> Whether or not a corporation shall seek to enforce in the courts a cause of action for damages is, like other business questions, ordinarily a matter of internal management and is left to the discretion of the directors, in the absence of instruction by vote of the stockholders. Courts interfere seldom to control such discretion *intra vires* the corporation, except where the directors are guilty of misconduct equivalent to a breach of trust, or where they stand in a dual relation which prevents an unprejudiced exercise of judgment * * *.

**3.** Although not specifically argued, appellant's position here was accepted by the Iowa Supreme Court in *Miller v. Register and Tribune Syndicate, Inc.*, 336 N.W.2d 709 (Iowa 1983). The *Miller* court recognized the potential for structural bias on the part of a litigation committee appointed by directors who are parties to derivative actions. *Id.* at 718. The court therefore adopted a prophylactic rule prohibiting directors charged with misconduct from participating in the selection process. When a majori-

*Id.* at 263–64, 37 S.Ct. at 510; *see also Auerbach*, 47 N.Y.2d at 629, 419 N.Y.S.2d at 926, 393 N.E.2d at 1000 (courts ill-equipped to evaluate business judgments while corporate directors peculiarly qualified to discharge that responsibility).

■ Appellant argues the business judgment rule does not apply in this case, where the directors are accused of self-dealing. *See Abbey*, 603 F.2d at 727 (exception to business judgment rule applies where board's decision to bar derivative action is made by directors subject to personal liability in action and not expected to make impartial determination). The exception does not apply here because the directors accused of self-dealing did not investigate and recommend dismissal of appellant's action. *See Lewis*, 615 F.2d at 782. We further note that those interested directors did not actually select and appoint the disinterested committee.

■ Appellant next argues an allegation of self-dealing on the part of a majority of directors disqualifies the entire board from appointing an independent committee.[3] We agree, however, with the *Auerbach* court addressing the same argument, stating:

> [T]o disqualify the entire board would be to render the corporation powerless to make an effective business judgment with respect to prosecution of the derivative action. The possible risk of hesitancy on the part of the members of any committee, even if composed of outside, independent, disinterested directors, to investigate the activities of fellow members of the board where personal liability is at stake is an inherent, inescapable, given aspect of the corporation's predicament. To assign responsibility of the dimension here involved to individuals

ty of directors are parties to the action, the corporation is required to apply to the court for appointment of a "special panel" to investigate and report on the pursuit or dismissal of a shareholder derivative action. *Id.* at 718. We decline to adopt the *Miller* rule based on our interpretation of section 302A.243 to preclude judicial interference beyond inquiry into the interest and good faith conduct of an appointed committee.

211

wholly separate and apart from the board of directors would, except in the most extraordinary circumstances, itself be an act of default and breach of the nondelegable fiduciary duty owed by the members of the board to the corporation and to its shareholders, employees and creditors. For the courts to preside over such determinations would similarly work an ouster of the board's fundamental responsibility and authority for corporate management.

*Auerbach,* 47 N.Y.2d at 633, 419 N.Y.S.2d at 928, 393 N.E.2d at 1002; *see Lewis,* 615 F.2d at 783.

■ Lastly, appellant argues section 302A.243 applies only to a publicly held corporation and not to a small, closely held corporation based on fiduciary duties imposed on its officers and unique problems affecting a minority shareholder. *See Fewell v. Tappan,* 223 Minn. 483, 494, 27 N.W.2d 648, 654 (1947); *Westland Capital Corp. v. Lucht Engineering,* 380 N.W.2d 709, 713 (Minn.1981). The legislature here, however, has not drawn that distinction, which is evident in other areas of the Business Corporation Act. *See, e.g.,* Minn.Stat. § 302A.461 (access to corporate records); Minn.Stat. § 302A.751 (voluntary dissolution). Our function is to interpret section 302A.243 and not decide on its wisdom and utility. *See Essling v. Markman,* 335 N.W.2d 237, 240 (Minn.1983).

■ Thus, contrary to appellant's arguments, the trial court properly limited its inquiry to whether the appointed committee members were disinterested within the meaning of section 302A.243 and conducted their investigation in good faith. *See* Minn. Stat. § 302A.011, subd. 13 (1986) (good faith defined as "honesty in fact in the conduct of the act or transaction concerned"). Significantly, appellant did not offer any evidence to dispute finding that Finn and Ogden were disinterested committee members and that they conducted their investigation in good faith. Our review of the record shows ample support for those findings. Because respondents therefore complied with requirements imposed by section 302A.243, the trial court properly

granted NuAire's motion to dismiss appellant's action.

■ 3. In *Bosch v. Meeker Cooperative Light and Power Association,* 257 Minn. 362, 101 N.W.2d 423 (1960), the Minnesota Supreme Court established the standard for allowing costs and attorney fees in a shareholder derivative action. The court stated:

Where an action by a stockholder results in a *substantial benefit* to a corporation he should recover his costs and expenses. As to what is a "substantial benefit" is for the trial court to determine in the light of the facts and circumstances of the particular case. Without attempting in any way to define the term or circumscribe its application, we would say that a substantial benefit must be something more than technical in its consequence and be one that accomplishes a result which corrects or prevents an abuse which would be prejudicial to the rights and interests of the corporation or affect the enjoyment or protection of an essential right to the stockholder's interest.

*Id.* at 366–67, 101 N.W.2d at 426–27 (footnote omitted) (emphasis added). The *Bosch* court also stated:

It should be recognized that to grant an award of fees and expenditures against a corporation in every instance where the officers of the corporation act outside of their corporate powers would be to invite and encourage certain actions intended not to redress real wrongs but to realize upon their nuisance value. Nevertheless, it would be unrealistic to deny that derivative suits instituted in good faith to correct or prevent misconduct of corporate officers and directors may be of substantial benefit.

*Id.* at 365, 101 N.W.2d at 426. A shareholder derivative action instituted in good faith requires a shareholder to seek the benefit of the corporation and not that shareholder's individual interest. *See Aiple v. Twin City Barge & Towing Co.,* 279 Minn. 22, 27, 154 N.W.2d 898, 902 (1967). The *Aiple* court explained:

Fees and expenses incurred by a stockholder should not be chargeable against

a corporation where the results benefit the stockholder personally rather than other stockholders of the corporation. A corporation should not be burdened with expenses incurred by stockholders to promote their individual interests and not for the immediate benefit of the corporation.

*Id.* "[T]he reasonable amount to be allowed for expenses and attorneys' fees rests in the sound discretion of the trial court." *Bosch*, 257 Minn. at 367, 101 N.W.2d at 427.

In this case, although the parties disputed the amount of savings to the corporation due to rescission of the deferred compensation agreement, the trial court found a substantial benefit to the corporation, stating:

This Court has examined the experts' reports and the committee's report and concludes that rescission of the deferred compensation agreement conferred a substantial benefit on the corporation, regardless of the exact amount of dollars saved. This conclusion is based on the committee's determination that the reasons justifying the agreement were "not sufficient to justify the *crippling effect* that the funding of the contract obligations could have on the company after Max Peters' retirement or disability." Committee report at 13. (Emphasis added.) Since the agreement was unfunded, annual payments to Peters apparently would have been made out of current general revenues at a time when the corporation would have been attempting to recover from the loss of its key man.

The court also noted a substantial benefit was conferred despite respondents' argument that the agreement was unfunded and therefore cost the corporation nothing. The court reasoned the " 'rescission' prevented future harm to NuAire."

The court explained its reduction in appellant's attorney fees by listing the following reasons:

1. *Duplication of effort.* While the decision of an experienced trial attorney and an experienced corporate attorney to join forces in litigating this factually complex derivative action was undoubtedly justified, it resulted in duplication of effort. For example both counsel attended the depositions of nine witnesses and several court hearings.

2. *Time billed in this action benefits Larson action.* Since many of the issues in the *Larson* action are related to or are the same as issues in this derivative suit, the hours expended by [appellant's] counsel in developing this case will lessen the hours necessary to prepare the *Larson* suit. Because *Larson* is not a derivative suit brought on behalf of the corporation, this factor strongly suggests that the requested fees should be reduced.

3. *Committee's finding that only one of plaintiff's allegations merited action by the corporation.* Defense counsel have cited *Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520 (Minn. 1986) and *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) as examples of reduced fee awards in other areas of the law where plaintiff has prevailed on only a portion of his claims. This approach was also considered in *Zilker v. Klein*, 540 F.Supp. 1196 (N.D.Ill.1982), a derivative suit in which the court focused on the number of claims that had been dismissed. In the case at bar, there were seven basic allegations investigated by the committee * * *. The committee recommended action in only one area—the deferred compensation agreement, which was part of its analysis of fringe benefits. Counsel's time cannot be severed into seven, neat pieces, given the complexity of the factual issues involved in this suit and the fact that it was counsel's broadly-based discovery efforts which led to their discovery of the deferred compensation agreement after more than two years of litigation. However, even though discovery on many of the issues was entwined, the fact that only one of [appellant's] allegations was determined by the committee to be worth further action supports a significant reduction in fees.

4. *Purpose of derivative actions.* Derivative actions are designed to bene-

fit corporations. Large awards can invite and encourage certain actions not to redress wrongs but to realize on their nuisance value. *Bosch* at 257 Minn. 365 [101 N.W.2d at 426]. *See also*, Batista, "Counsel Fees in Derivative Litigation: End of a Golden Harvest?" 11 Sec.Reg. L.J. (1983). Given this consideration, the Court feels that some consideration has to be given to the effect of large award of fees on a corporation in relation to the benefit achieved by the derivative suit.

Although the services rendered by [appellant's] counsel appear to be of high quality, meriting their normal hourly rate, the foregoing factors compel a sizeable reduction in [appellant's] requested attorney fees. The court sets fees at $70,000.

(Footnote omitted).

▋ Appellant primarily argues the trial court abused its discretion in reducing his fees because the full amount was undisputed. The trial court, however, is not required to award undisputed fees, but reasonable fees, and is accorded broad discretion in determining that amount. *Bosch*, 257 Minn. at 367, 101 N.W.2d at 427.

Appellant also takes issue with the court's policy reason limiting a large award to curtail nuisance suits as warned in *Bosch* at 365, 101 N.W.2d at 426. Appellant relies on a competing policy to award full fees to encourage other shareholders to bring meritorious derivative actions. *Cf. Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970) (attorney fees recoverable for successful plaintiffs acting on behalf of a class). In this case, the court properly found the full amount actually benefits Larson, who is not involved in a derivative action, but one to dissolve NuAire.

▋ Respondents claim appellant is not entitled to any fees by continuing to argue no substantial benefit was conferred because the rescinded deferred compensation agreement resulted in no cost to the corporation. A substantial benefit, however, need not be pecuniary. *Bosch* 257 Minn. at 365, 101 N.W.2d at 426. The court properly found the agreement's re-

scission "prevented future harm," which falls squarely within the definition of substantial benefit, "a result which corects or prevents an abuse." *Bosch* at 366, 101 N.W.2d at 427.

▋ Respondents alternatively argue further reduction in appellant's fees is warranted because appellant's fees incurred for his unsuccessful claims are not recoverable. *See, e.g., Specialized Tours, Inc. v. Hagen*, 392 N.W.2d 520, 542 (Minn.1986) (method for determining fees under securities act where no fees are recoverable for services on unsuccessful or unrelated claims because those services cannot be deemed to have been expended in pursuit of the ultimate result achieved). Without deciding whether the *Specialized Tours* method applies to shareholder derivative actions, we note the trial court addressed the difficulty in applying that method in this particular case. In view of the trial court's discretion in determining a reasonable amount of fees and its reasons therefor, we find no abuse of discretion in the trial court's reduction of appellant's attorney fees.

▋ 4. Minn.Stat. § 549.21, subd. 2 (1986) allows a court to award a party costs and attorney fees if the opposing party acted in bad faith or asserted frivolous claims. *Id.* A decision regarding an award under this statute can only be upset upon a finding of abuse of discretion by the trial court. *See Blattner v. Forster* 322 N.W.2d 319, 321 (Minn.1982).

▋ The trial court denied respondents' costs and attorney fees under section 549.-21 by specifically finding appellant did not act in bad faith. The court stated:

The Court further finds that [appellant] has not proceeded in bad faith. The fact that [appellant] prevailed on only one of his claims will not support such a determination, nor will counsel's tactical decision not to participate in the committee's investigation. Since minority shareholders frequently seek mandatory buyout or corporate dissolution as alternatives to requested derivative relief, the fact the [appellant's] counsel also repre-

sent another minority shareholder who is seeking to dissolve NuAire will not support a finding of bad faith.

Respondents argue the trial court failed to adequately consider what they claim is appellant's improper objective, "to bolster the Larson action." The court's finding, however, shows the trial court did consider appellant's objective as well as his conduct throughout the proceedings. The court acted within its discretion in refusing to find bad faith.

Respondents also claim they are entitled to fees associated with defending appellant's unsuccessful claims. *See Strand v. Nelson*, 380 N.W.2d 906, 910 (Minn.Ct.App. 1986) (presentation of single valid claim does not immunize party from hazards of award under section 549.21 for other frivolous or bad faith claims). *Strand* does not apply here where the trial court specifically found appellant's other claims were not frivolous nor brought in bad faith. We find no abuse of discretion in the trial court's refusal to award respondents costs and attorney fees.

## DECISION

Appellant did not meet his burden of showing Minn.Stat. § 302A.243 was unconstitutional. The court correctly determined respondents complied with that statute's requirements by finding the committee recommending dismissal of appellant's claims was disinterested and conducted its investigation in good faith. The trial court therefore properly dismissed appellant's action.

Similarly, the trial court properly found appellant's action conferred a substantial benefit to NuAire, which in turn requires NuAire to reimburse appellant for his costs and attorney fees. The court did not abuse its discretion by reducing appellant's attorney fees nor by refusing respondents' costs and attorney fees under Minn.Stat. § 549.21.

Affirmed.