**Lloyd DRILLING, et al., on Behalf of Themselves and Derivatively, on Behalf of Grand Casinos, Inc., Appellants,**

v.

**Lyle BERMAN, et al., Respondents,**

**Grand Casinos, Inc., Respondent.**

No. C9–98–1571.

Court of Appeals of Minnesota.

March 9, 1999.

Karl L. Cambronne, Becky L. Erickson, Chestnut & Brooks, P.A., Minneapolis, MN, Kevin Roddy, Milberg Weiss Bershad Hynes & Lerach, LLP, Los Angeles, CA (attorneys for appellants)

Craig W. Gagnon, Michael E. Keyes, Thomas E. Ring, Oppenheimer, Wolff & Donnelly, Minneapolis, MN (attorneys for respondent Grand Casinos)

Michael Berens, Kelly & Berens, P.A., Minneapolis, MN (attorneys for respondents Lyle Berman, et al.)

Considered and decided by HALBROOKS, Presiding Judge, CRIPPEN, Judge, and HOLTAN, Judge.*

_____

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by ap-

## OPINION

HALBROOKS, Judge.

Appellants Lloyd Drilling, Carolyn Chalmers, Eric S. Janus and Brickell Partners appeal from a judgment dismissing their shareholder derivative claims against respondent Grand Casinos, Inc. and individual respondents Lyle Berman, Patrick R. Cruzen, Timothy J. Cope, Stanley M. Taube, David W. Anderson, Morris Goldfarb, Ronald Kramer, and David L. Rogers. We affirm.

### FACTS

Respondent Grand Casinos, Inc. (Grand) is a publicly traded corporation involved in the gaming industry. Lyle Berman, Patrick R. Cruzen, Stanley M. Taube, Morris Goldfarb, Ronald Kramer, and David L. Rogers are members of Grand's board of directors. Timothy J. Cope is Grand's chief financial officer. David W. Anderson was Grand's executive vice president and a director until he resigned in February 1996.

Appellants initiated this shareholder derivative action in February 1997. Appellants alleged the individual respondents breached their fiduciary duty and misused corporate assets by: (1) using Grand's funds to make equity and debt investments in Stratosphere Corporation; (2) misappropriating and misusing material, non-public corporate information to profit personally through insider trading in Grand's stock; and (3) exposing Grand to liability for violations of federal and Nevada securities laws.

In response to appellants' action, Grand's board appointed a special litigation committee pursuant to Minn.Stat. § 302A.241, subd. 1 (1996), to investigate appellants' claims and determine whether or not they should be pursued. The committee members were Carl Platou, Samuel Hanson, and Murray Harpole. The committee in turn appointed Stanley Efron as legal counsel to the committee.

Both Platou and Harpole have extensive business experience. Hanson is an attorney with substantial business law experience; Efron is an attorney with prior experience as

pointment pursuant to Minn. Const. art. VI, § 10.

counsel to special litigation committees. Neither the committee members nor Efron had any prior relationship with Grand, its directors, or any of the individual respondents.

Throughout its investigation, the committee reviewed thousands of documents provided by the parties. It also interviewed four witnesses. Appellants' counsel actively participated in the questioning of the witnesses, but the committee independently determined which witnesses to interview.

The committee issued its final report in December 1997, recommending none of appellants' claims be pursued. The committee's report did not include any analysis. Based on the committee's recommendation, respondents moved for summary judgment. The district court granted summary judgment in favor of respondents and dismissed appellants' derivative claims on the grounds that the special litigation committee appointed to investigate those claims was independent and recommended dismissal after a good faith investigation.

### ISSUE

Did the district court err in dismissing appellants' shareholder derivative claims on the ground the special litigation committee conducted its investigation in good faith?

### ANALYSIS

■■■ On appeal from a summary judgment, this court examines the record to determine whether any genuine issues of material fact exist and whether the district court properly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics,* 426 N.W.2d 425, 427 (Minn.1988). This court must view the evidence in the light most favorable to the nonmoving party. *Id.* However, a court is not required to draw unreasonable inferences in order to save the nonmoving party. *City of Savage v. Varey,* 358 N.W.2d 102, 105 (Minn.App.1984), *review denied* (Minn. Feb. 27, 1985). We need not defer to the district court's decision on a legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n,* 358 N.W.2d 639, 642 (Minn.1984).

Prior to 1989, Minn.Stat. § 302A.243 (1988) restricted judicial review of a special litigation committee decision to terminate a derivative suit to a determination of whether the committee was disinterested and made its decision in good faith. *Black v. NuAire, Inc.,* 426 N.W.2d 203, 209–10 (Minn.App. 1988), *review denied* (Minn. Aug. 24, 1988). In 1989, the legislature repealed Minn.Stat. § 302A.243.1989 Minn. Laws ch. 172, § 11. In repealing the section, the legislature made it clear it was not commenting on the substance of the section and that its repeal "must be interpreted in the same manner as if section 302A.243 had not been enacted." *Id.,* § 12. The legislature took that action in recognition that Minnesota was one of the few states with legislation governing judicial review of special litigation committees. *Hearing on S.F. No. 190 Before the Senate Comm. on the Judiciary* (Apr. 11, 1989) (statement of Sen. Luther). The repeal represented "a commitment to let the caselaw develop," *id.,* and a desire to give our courts flexibility. *Hearing on S.F. No. 190 Before the Senate Comm. on the Judiciary, Civil Law Division* (Mar. 17, 1989) (statement of Sen. Luther).

Special litigation committees are now governed by Minn.Stat. § 302A.241, subd. 1 (1996):

A resolution approved by the affirmative vote of a majority of the board may establish committees having the authority of the board in the management of the business of the corporation only to the extent provided in the resolution. Committees may include a special litigation committee consisting of one or more independent directors or other independent persons to consider legal rights or remedies of the corporation and whether those rights and remedies should be pursued. Committees other than special litigation committees * * * are subject at all times to the direction and control of the board.

Since the 1989 repeal of section 302A.243, there has been one prior opportunity to consider what standard of review applies to recommendations of special litigation committees in Minnesota. In *Skoglund v. Brady,* this court determined that the standard set

forth in *Black,* limiting judicial review to determining whether the committee was independent and conducted its review in good faith, continued to apply. *Skoglund v. Brady,* 541 N.W.2d 17, 21 (Minn.App.1995), *review denied* (Minn. Feb. 27, 1996).

This approach is in line with the New York approach, applying a deferential business judgment standard in recognition that courts are "ill-equipped to evaluate business judgments while corporate directors [are] peculiarly qualified to discharge that responsibility." *Black,* 426 N.W.2d at 210 (citing *Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979)); *see also Lewis v. Anderson,* 615 F.2d 778 (9th Cir.1979) (construing California law), *cert. denied,* 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980).

Other jurisdictions have added a second step to the *Auerbach* test in order to apply more scrutiny to a committee's conclusions. First, the corporation must establish the committee is independent, acted in good faith and had reasonable bases for its conclusions. Then the court applies its own business judgment to the committee's conclusions. *Zapata Corp. v. Maldonado,* 430 A.2d 779, 789 (Del.1981); *see also Joy v. North,* 692 F.2d 880, 891 (2d Cir.1982) (construing Connecticut law), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983); *Abella v. Universal Leaf Tobacco Co.,* 546 F.Supp. 795, 799–800 (E.D.Va.1982); *Watts v. Des Moines Register & Tribune,* 525 F.Supp. 1311, 1326 (S.D.Iowa 1981); *Strougo v. Padegs,* 1 F.Supp.2d 276, 281 (S.D.N.Y.1998) (construing Maryland law). The use of the second step is within the court's discretion. *Kaplan v. Wyatt,* 499 A.2d 1184, 1192 (Del.1985).

Some courts have chosen to articulate their own standards rather than follow *Auerbach* or *Zapata. See, e.g., Alford v. Shaw,* 320 N.C. 465, 358 S.E.2d 323, 328 (1987) (applying a "modified *Zapata* rule" where reviewing court must determine whether the transaction complained of was just and reasonable to the corporation); *Houle v. Low,* 407 Mass. 810, 556 N.E.2d 51, 59 (1990) (establishing a standard of review whereby the court determines whether the committee is disinterested

and whether the committee "reached a reasonable and principled decision").

■ Appellants argue this court should extend the law to more closely scrutinize a special litigation committee recommendation by inquiring into the reasonableness of the committee's decision in addition to the committee's independence and good faith. We disagree. This is not a question of first impression. On review from the dismissal of a derivative suit based on the recommendation of a special litigation committee, we limit our inquiry to whether the committee was independent and conducted its investigation in good faith. *Skoglund,* 541 N.W.2d at 21; *Black,* 426 N.W.2d at 209–10.

Appellants do not challenge the independence of the committee members, but rather the good faith with which the investigation and recommendation were made. Appellants argue that the brevity of the committee report and the nature of its investigation do not demonstrate good faith.

*1. The Report*

■ Appellants contend the brevity of the committee's report indicates a lack of good faith because it does not provide the reasoning underlying its decision and does not address all of the claims raised in appellants' complaint. Appellants rely on *In re Par Pharm., Inc. Derivative Litig.,* 750 F.Supp. 641, 647–48 (S.D.N.Y.1990), and *Holmstrom v. Coastal Indus., Inc.,* 645 F.Supp. 963, 972 (N.D.Ohio 1984), to support their argument that the report does not provide a sufficient basis from which to establish good faith. However, these cases provide scant support for appellants' position.

The *Holmstrom* court summarily and without analysis decided the

> summary treatment of the issue of self dealing and use of the power as directors to perpetuate their self control negates the possibility of *judicial approval* of the *work* of the [committee],

and therefore the litigation committee's report was insufficient to establish the committee had "acted reasonably and in good faith." *Holmstrom,* 645 F.Supp. at 972 (emphasis added). Although the *Holmstrom* court pur-

ported to follow the approach set forth in *Auerbach,* it clearly did not. *Auerbach* states the corporation

> may be expected to show that the areas and subjects to be examined are reasonably complete and that there has been a good-faith pursuit of inquiry into such areas and subjects. *What has been uncovered and the relative weight accorded in evaluating and balancing the several factors and considerations are beyond the scope of judicial concern.*

*Auerbach,* 419 N.Y.S.2d 920, 393 N.E.2d at 1003 (emphasis added). The *Holmstrom* court sought to perform a substantive review of the committee's report—to determine whether the conclusions could be supported by factual findings—in order to determine whether it could grant "judicial approval." *Holmstrom,* 645 F.Supp. at 972; *but cf. Black,* 426 N.W.2d at 209 (distinguishing North Carolina law from Minnesota law on the basis the latter does not require judicial approval). Thus, *Holmstrom* does not follow the business judgment rule as articulated in *Auerbach* and adopted by this court. *See Black,* 426 N.W.2d at 210 (declaring this court's interpretation of the application of the business judgment rule to shareholder derivative actions is in line with *Auerbach* ). Therefore, *Holmstrom* is not instructive.

*Par Pharm.* involved a special litigation committee that had not been granted the authority to determine the corporation's course of action with respect to the litigation, but only to make a recommendation to the board. The court determined the business judgment rule did not apply because the "mere advisory role of the Special Litigation Committee fail[ed] to bestow sufficient legitimacy on the Board's decision to warrant deference." *Par Pharm.,* 750 F.Supp. at 647. As a result, the analysis undertaken in *Par Pharm.* is not applicable to the present case.

Furthermore, Minnesota law does not support appellants' argument that respondents must show the committee had a reasonable basis for its conclusions. *See Black,* 426 N.W.2d at 209-10 (holding courts are precluded from reviewing the merits of a recommendation to dismiss a derivative action when a disinterested committee acting in good faith makes its recommendation). Cases relied on by appellants where courts have inquired into the reasonableness of a committee recommendation have not applied the *Auerbach* approach. *See Peller v. The Southern Co.,* 707 F.Supp. 525, 527-531 (N.D.Ga.1988) (applying the more stringent *Zapata* test and determining the committee did not show reasonable bases for its conclusion); *Grafman v. Century Broadcasting Corp.,* 762 F.Supp. 215, 221 (N.D.Ill.1991) (applying Delaware law—the *Zapata* jurisdiction—and determining the report provided plausible reasons for its conclusions); *Johnson v. Hui,* 811 F.Supp. 479, 488 (N.D.Cal. 1991) (applying Delaware law and finding the committee's conclusions to be well reasoned and supported by the evidence); *Kaplan v. Wyatt,* 499 A.2d 1184, 1191 (Del.1985) (determining the facts supported the committee's conclusions); *Grossman v. Johnson,* 89 F.R.D. 656, 664 (D.Mass.1981) (applying "federal policy" [1] which involved "stricter scrutiny"—inquiry into reasonableness—than required by Maryland law, and determining the committee's decision was reasonable), *aff'd,* 674 F.2d 115 (1st Cir.1982), *cert. denied,* 459 U.S. 838, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982); *Rosengarten v. Buckley,* 613 F.Supp. 1493, 1500 (D.Md.1985) (applying *Zapata* rule to examine reasonableness of the committee's conclusion); *Abbey v. Control Data Corp.,* 603 F.2d 724, 730 (8th Cir.1979) (determining the business judgment rule allows an independent board to terminate a derivative action, but not analyzing good faith, independence or reasonableness [2]), *cert.*

---

1. This decision is not in line with the Supreme Court's decision in *Burks v. Lasker,* that state law governs the power of a special litigation committee to terminate derivative suits. *Burks v. Lasker,* 441 U.S. 471, 99 S.Ct. 1831, 1841, 60 L.Ed.2d 404 (1979). The district court's decision was later affirmed on the alternate ground that the plaintiff had not made a demand on the corporation's board prior to bringing the action. *Gross-*

*man v. Johnson,* 674 F.2d 115, 118 (1st Cir. 1982), *cert. denied,* 459 U.S. 838, 103 S.Ct. 85, 74 L.Ed.2d 80 (1982).

2. Appellants cite to the fact section of the *Abbey* opinion for the proposition that reasonableness was considered by the court; however, that issue was not before the court. The court's holding

*denied,* 444 U.S. 1017, 100 S.Ct. 670, 62 L.Ed.2d 647 (1980).

■ This court has adopted the more deferential *Auerbach* approach to the application of the business judgment rule. *See Skoglund,* 541 N.W.2d at 21; *Black,* 426 N.W.2d at 210. Under this approach,

> the conclusion reached by the special litigation committee is outside the scope of our review. Thus, the courts cannot inquire as to which factors were considered by that committee or the relative weight accorded them in reaching that substantive decision * * *.

*Auerbach,* 419 N.Y.S.2d 920, 393 N.E.2d at 1002. We decline appellants' invitation to extend the law in Minnesota. *See Tereault v. Palmer,* 413 N.W.2d 283, 286 (Minn.App. 1987), *review denied* (Minn. Dec. 18, 1987).

■ The committee's final report here was two and one-half pages long. It essentially incorporated the committee's prior 21–page status report. In addition, the summary judgment motion was supported by affidavits from the committee members and from the committee's counsel. Contrary to appellants' assertion, the reports and affidavits, taken together, clearly set forth the committee considered all claims. Furthermore, the reports and affidavits outline the extent of the committee's investigation in detail. Under the approach adopted by this court, applying the business judgment rule to the conclusions of the committee, the nature of the committee's investigation has far greater bearing on the issue of good faith than does the content or length of the committee report. *See Auerbach,* 419 N.Y.S.2d 920, 393 N.E.2d at 1002 (recognizing that, while courts do not possess the expertise required to second guess a business judgment, they are well equipped to determine the "methodologies and procedures best suited to the conduct of an investigation of facts and the determination of legal liability").

#### 2. The Investigation

■ Appellants argue the committee's failure to interview all of the individual respondents and other persons with relevant information demonstrates the committee did not conduct a thorough investigation and that, therefore, the investigation was not conducted in good faith. Appellants further argue the committee relied too heavily on its counsel and counsel for appellants to develop the testimony of the persons who were interviewed.

■ Whether a committee's investigative methods demonstrate good faith will depend on the nature of the particular investigation. *Auerbach,* 419 N.Y.S.2d 920, 393 N.E.2d at 1003. Rather than focusing on one element of the committee's investigation, the proper inquiry is into the adequacy of the committee's procedures and methodologies as a whole. *See, generally, id.* (examining the committee's use of counsel, review of documents and extent of interviews); *Grafman,* 762 F.Supp. at 220 (examining review of documents, interviewing of witnesses, and use of capable counsel); *Abella,* 546 F.Supp. at 800–01 (examining committee's use of counsel, review of documents, number of meetings—10, and quality of effort at meetings).

■ Factors relevant to the adequacy of the committee's investigation include:

> (1) the length and scope of the investigation, (2) the committee's use of independent counsel or experts, (3) the corporation's or the defendants' involvement, if any, in the investigation, and (4) the adequacy and reliability of the information supplied to the committee.

*Lewis v. Boyd,* 838 S.W.2d 215, 224 (Tenn.Ct. App.1992) (adopting a modified approach wherein the court first reviews the adequacy of the investigation, then determines whether "the committee has reached a reasoned and principled decision that is in the corporation's best interests * * *").

The record in the present case indicates that the committee retained highly respected counsel with prior experience as counsel to three other special litigation committees. The committee met beginning on June 4, 1997, and concluded their investigation on December 31, 1997. They met as a full

was limited to determining that the business judgment rule applied.

group, including counsel, no less than nine times between August 26, 1997 and December 31, 1997. The committee invited participation by the parties. They received and reviewed thousands of pages of documents submitted for consideration by the parties, as documented in the November 13, 1997 status report. They received and reviewed factual statements submitted by both parties. They interviewed four witnesses—three of the individual respondents and one other individual who had been responsible for preparing numerous pro formas in connection with the Stratosphere project. Counsel for both parties as well as the committee members and the committee's counsel participated in the questioning of the witnesses. The committee determined when it had heard enough testimony from each witness. The committee directed its counsel to prepare legal memoranda on relevant issues. Finally, the committee received and reviewed closing arguments submitted by both parties. On that record, the committee concluded pursuit of appellants' claims would not benefit the corporation.

Appellants rely on *Hasan v. Clevetrust Realty Investors*, 729 F.2d 372 (6th Cir.1984), for the proposition that a committee's investigation must, at minimum, include interviews of all the alleged wrongdoers. But *Hasan* involved a special litigation committee consisting of one director who was found to have several significant business relationships with the individual defendants. *Id.* at 379. The *Hasan* court focused its inquiry almost entirely on the question of disinterestedness. *Id.* at 377–79. The court concluded the inquiry by determining

> Clevetrust * * * did not follow "prudent practice" when it selected Peter Galvin as the only member of its special litigation committee. Galvin's "personal interests" and "prior affiliation with the corporation" preclude any affirmative demonstration of disinterest. We find therefore that the corporation has not met its burden of demonstrating the good faith and disinterestedness of Galvin's "committee."

*Id.* at 379. Although the court went on to determine the investigation was procedurally inadequate for a failure to interview all persons with information regarding the questioned transactions, *id.*, that determination was inextricably intertwined with the court's conclusion that the committee was not disinterested.

The committee's investigation here was procedurally adequate to show good faith under the factors articulated in *Lewis v. Boyd*, 838 S.W.2d at 224, and under the factors considered in *Auerbach*, 419 N.Y.S.2d 920, 393 N.E.2d at 1003. The investigation was not "so restricted in scope, so shallow in execution, or otherwise so Pro forma or half hearted as to constitute a pretext or sham" and prevent application of the business judgment rule. *Id.* Appellants' assertion that persons the committee chose not to interview "may have had important information," is insufficient to give rise to a material fact issue. *See Fownes v. Hubbard Broadcasting, Inc.*, 302 Minn. 471, 474, 225 N.W.2d 534, 536 (1975) (holding speculation is insufficient to show a genuine issue of material fact under Rule 56).

 Furthermore, the contention the committee relied too heavily on its counsel and appellants' counsel in the questioning of the witnesses does not weigh adversely on the good faith of the committee. The committee members independently determined when they had heard enough testimony from each witness. Appellants do not assert the information gained during the interviews was insufficient. Moreover, the use of capable counsel is generally seen as demonstrative of good faith. *See, e.g., Auerbach*, 419 N.Y.S.2d 920, 393 N.E.2d at 1003; *Grafman*, 762 F.Supp. at 220; *Abella*, 546 F.Supp. at 800–01; *Johnson*, 811 F.Supp. at 489; *Kaplan*, 499 A.2d at 1191; *Lewis v. Boyd*, 838 S.W.2d at 224.

### 3. Attorney Work Product

 Appellants further argue the committee acted in bad faith when it refused to provide the legal memoranda prepared by its counsel. Appellants assert perhaps those memoranda could provide some understanding of the reasons behind the committee's decision. But because the law in Minnesota precludes courts from performing a substantive review, any information regarding the

committee's reasoning is not relevant to our review. *Skoglund*, 541 N.W.2d at 21; *Black*, 426 N.W.2d at 209–10.

Authorities cited by appellants in support of their proposition that counsel's work product should be disclosed are from jurisdictions applying the more stringent *Zapata* approach, which allows the courts to examine the reasoning behind the committee's recommendation. *See Joy*, 692 F.2d at 893–94; *Peller*, 707 F.Supp. at 529. Appellants' other cited case merely stands for the proposition that the committee's report must be disclosed. *See In re Perrigo Co.*, 128 F.3d 430, 438 (6th Cir.1997). Moreover, since Minnesota courts are precluded from reviewing a special litigation committee's substantive recommendation, appellants cannot show good cause to require they be granted access to the work product. *See Ward v. Succession of Freeman*, 854 F.2d 780, 784–85 (5th Cir. 1988) (holding shareholders may gain access to otherwise privileged information, but not in situations where the stockholders may wish to second-guess management as to matters purely of judgment so as not to result in a deterioration of candid attorney-client communication). Appellants fail to demonstrate how access to this information, not discoverable under the rules, would aid the current inquiry or create a material fact issue. *See* Minn. R. Civ. P. 26.02(c) (protecting against disclosure of attorney work product absent a showing of substantial need and undue hardship).

## DECISION

Because the recommendation to dismiss appellants' shareholder derivative action was made by an independent committee that conducted its investigation in good faith, the district court properly dismissed the action.

**Affirmed.**