In re: **UNITEDHEALTH GROUP INCORPORATED SHAREHOLDER DERIVATIVE LITIGATION.**

Nos. 06–CV–1216, 27 CV 06–8085.

United States District Court, D. Minnesota.

Dec. 24, 2008.

Edward F. Haber, Michelle H. Blauner, Shapiro Haber & Urmy LLP, Boston, MA, Jack L. Chestnut, Jeffrey D. Bores, Karl L. Cambronne, Chestnut & Cambronne, Brian F. Rice, James P. Michels, Karin E. Peterson, Ann E. Walther, Rice, Michels & Walther LLP, James R. Behrenbrinker, Schaefer Law Firm, LLC, MPLS, MN, Jay W. Eisenhofer, Michael D. Barry, Sidney S. Liebesman, Cynthia A. Calder, Grant & Eisenhofer PA, Wilmington, DE, Ramzi Abadou, Coughlin Stoia Geller Rudman & Robbins LLP, San Diego, CA, Adam Wierzbowski, Beata Gocyk–Farber, C. Chad Johnson, David Webber, Gerald H. Silk, Bernstein Litowitz Berger & Grossmann LLP, New York, NY, for Plaintiffs.

Alexandra A.E. Shapiro, Blair Connelly, David M. Brodsky, Santosh Aravind, Sarah Lightdale, William O. Reckler, Latham & Watkins LLP, Seth L. Levine, Foley & Lardner LLP, Carl H. Loewenson, Jr., Grant J. Esposito, Kyle Mooney, Morrison & Foerster LLP, New York, NY, Steve W. Gaskins, Wendy M. Canaday, Flynn Gaskins & Bennett, LLP, David L. Hashmall, Felhaber Larson Fenlon & Vogt, PA, Andrew S. Hansen, Heidi A.O. Fisher, Michael J. Bleck, Oppenheimer Wolff & Donnelly LLP, Barbara P. Berens, Erin K. Fogarty Lisle, Paul R. Hannah, Kelly & Berens, PA, Matthew D. Forsgren, Richard G. Mark, Briggs & Morgan, PA, MPLS, MN, Michael P. Matthews, Foley & Lardner LLP, Milwaukee, WI, for Defendants.

## ORDER FOR PRELIMINARY SETTLEMENT APPROVAL

JAMES M. ROSENBAUM, District Judge.

This matter has been jointly considered by the United States District Court for the District of Minnesota and the District Court for the Fourth Judicial District of the State of Minnesota, Hennepin County (the "Courts"), on the parties' motion for preliminary approval of a settlement. The motion is granted.

### I. Background

More than two years ago, a *Wall Street Journal* article reported that certain exec-

utives, some of whom were employed at UnitedHealth Group, Inc. ("United-Health"), had received advantageously-timed stock options, dated to correspond to low points in the company's share price. These allegations led to a number of state and federal lawsuits, including shareholder derivative actions against UnitedHealth, charging its current and former leadership with breach of fiduciary duty, gross mis-management, waste of corporate assets, unjust enrichment, and breach of contract.

The UnitedHealth board of directors' initial public response to these disclosures was to appoint a committee of independent directors, who then retained the firm of Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale") to investigate the allegations. The law firm's investigators interviewed officers and directors of United-Health, with the exception of Dr. William McGuire, the company's president and chief executive officer, and Mr. David Lubben, its secretary and general counsel. After investigating, WilmerHale issued an October, 2006, report which concluded that many option grants to UnitedHealth officers and employees were "likely backdated." (Report of Wilmer Cutler Pickering Hale and Dorr LLP to the Special Committee of the Board of Directors of United Health Group, Inc., at 13 (October 15, 2006)). Following the issuance of the WilmerHale report, defendants McGuire, Lubben, and William Spears, a board member, resigned.

In further response to the shareholder derivative actions, UnitedHealth's board established a special litigation committee ("SLC") in June, 2006. The SLC was charged with investigating and deciding whether to pursue the action on the company's behalf. Nearly two and a half years later, the SLC recommended that the action be settled. The proposed settlement was tendered to the Courts in December, 2007. *See* Report of the Special Litigation Committee (December 6, 2007) ("SLC Report").

The settlement consisted largely of transfers of UnitedHealth stock and options. When first proposed to the Courts, UnitedHealth shares traded at $54.33, rendering a settlement value between $499.3 million (Black Scholes) and $495.1 million (intrinsic). The corporation's shares are now trading in the low-$20 range, reducing the settlement value to a range approximating $250 million, as of the date of this Order, and subject to market vagaries.

Having received the proposed settlement, the U.S. District Court certified a question to the Minnesota Supreme Court, seeking guidance regarding the degree of deference afforded an SLC's settlement decisions under Minnesota's business judgment doctrine. That question has been answered. *In re UnitedHealth Group Incorporated Shareholder Derivative Litigation*, 754 N.W.2d 544, 559 (Minn.2008).

With the Supreme Court's answer in hand, the SLC, and each named party, now moves for preliminary approval of the proposed settlement. As the proposed settlement encompasses both the state and federal claims, the undersigned judges have jointly considered these matters and have independently found the proposed settlements fall within the range of possible settlements of these claims, and a full hearing ought to be set to consider their fairness and adequacy in accord with Federal Rule of Civil Procedure 23.1 and Minnesota Rule of Civil Procedure 23.09.

## II. *Analysis*

■ A special litigation committee has the power to terminate a derivative action to the extent allowed by the state of incorporation. *See Burks v. Lasker*, 441 U.S. 471, 486, 99 S.Ct. 1831, 60 L.Ed.2d 404 (1979); *see also Smith v. Sperling*, 354 U.S. 91, 95, 77 S.Ct. 1112, 1 L.Ed.2d 1205

(1957). As UnitedHealth is incorporated in Minnesota, the Courts looks to Minnesota law, as elucidated by the Minnesota Supreme Court.

■ Under Minnesota law, a board of directors may create a special litigation committee "consisting of one or more independent directors or other independent persons to consider legal rights or remedies of the corporation and whether those rights and remedies should be pursued." Minn.Stat. § 302A.241, subd. 1 (2006). Once formed, the special litigation committee is "not subject to the board's direction and control." *In re UnitedHealth Group Incorporated Shareholder Derivative Litigation ("UnitedHealth")*, 754 N.W.2d 544, at 550 (Minn.2008). Thus, the special litigation committee allows the corporation to retain control of the litigation when one or more board members may have a conflict of interest.

■ A derivative action "belongs to the corporation, but the shareholders … bring the action where the corporation has failed to take action for itself." *UnitedHealth*, 754 N.W.2d at 559, citing *Janssen v. Best & Flanagan*, 662 N.W.2d 876, 882 (Minn.2003). The SLC's substantive decision to pursue the claims implicates a "careful balancing" of "legal, ethical, commercial, promotional, public relations, fiscal, and other factors familiar to the resolution of many if not most corporate problems." *Janssen*, 662 N.W.2d at 883. This balance "is best [struck] by the board of directors, which is familiar with the appropriate weight to attribute to each factor given the company's product and history." *Id.*

■ Minnesota law requires a court to "defer to an SLC's decision to settle a shareholder derivative action if (1) the members of the SLC possessed a disinterested independence and (2) the SLC's investigative procedures and methodologies were adequate, appropriate, and pursued in good faith." *UnitedHealth*, 754 N.W.2d at 559. In making this choice, Minnesota explicitly adopted the New York Court of Appeals' business judgment rule set forth in *Auerbach v. Bennett*, 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 (N.Y.1979). While *Auerbach* involved a corporate motion to dismiss, rather than a proposal to settle a shareholder derivative litigation, the Minnesota Supreme Court made clear its rule applies with equal force in the context of settlement. *UnitedHealth, id.* at 559.

Applying this test, the state and federal courts are constrained to defer to the SLC's decision settling this matter on the terms set forth in the SLC Report.

■ Considering the totality of the circumstances, including the eleven factors noted by the Minnesota Supreme Court, *see UnitedHealth, id.* at 560 & n. 11, the SLC is clearly disinterested and independent. When UnitedHealth's board established the SLC, it delegated "complete power and authority to investigate" the claims in the derivative litigation "and analyze the legal rights or remedies of the Company and determine whether those rights or remedies should be pursued." Board Resolution of June 26, 2006, SLC Report at Appendix B; *contrast Janssen*, 662 N.W.2d at 888 (finding lack of independence and good faith where initial board resolution restricted scope of SLC investigation).

The SLC's members were each former justices of the Minnesota Supreme Court. The members had no connection to UnitedHealth prior to accepting appointment to the SLC. Neither was a defendant in the shareholders' suits, nor did they face any potential liability under the complaints. The SLC retained independent experts in accounting and corporate governance and received advice from well-respected independent counsel. These fac-

tors strongly suggest the SLC is in a position to base its decision on the merits.

■ The board's resolution creating the SLC retained its authority to add members to the SLC. While potentially a problem, the Courts find the retained power to be trivial in this case. The board retained a theoretical ability to add new members, which could have been used to dilute the original SLC members' votes. That eventuality was neither threatened, nor did it occur. All parties agreed, and these Courts concur, that the expansion clause is not a factor worthy of consideration. Ultimately, any risk that the expansion provision could have influenced the SLC's decision in this case is far outweighed by the factors suggesting independence. The Courts find the SLC to be disinterested and independent, as required by Minnesota law.

■ Having established the SLC's independence, the Courts consider its investigative procedures and methodology. Whether an SLC's methods demonstrate good faith depend on the nature of the particular investigation. *See Drilling v. Berman,* 589 N.W.2d 503, 509 (Minn.Ct. App.1999), citing *Auerbach,* 47 N.Y.2d at 634, 419 N.Y.S.2d 920, 393 N.E.2d at 1003. Again, the Courts look to the totality of the circumstances. *See Drilling, id.* Factors underlying this decision include (1) the length and scope of the investigation; (2) the committee's use of independent counsel or experts; (3) the corporation's or the defendants' involvement, if any, in the investigation; and (4) the adequacy and reliability of the information supplied to the committee. *Id.* (internal quotation omitted). Evidence that "the investigation has been so restricted in scope, so shallow in execution, or otherwise so pro forma or halfhearted as to constitute a pretext or sham … would raise questions of good faith." *Auerbach,* 47 N.Y.2d at 634–35, 419 N.Y.S.2d 920, 393 N.E.2d at 1003.

Applying the *Drilling* factors, the Courts find the SLC's procedures were adequate, appropriate, and performed in good faith. Counsel for the SLC presented evidence showing the investigation's comprehensive scope. The SLC was granted, and exercised, "complete power and authority" to investigate. It quite properly decided to conduct its own independent investigation, rather than rely on the WilmerHale investigation. It began doing so in July, 2006, concluding its work in December, 2007. Each SLC member personally prepared for and interviewed 50 witnesses; reviewed thousands of pages of documents, including materials submitted by plaintiffs; and reviewed cases and other materials to develop an understanding of the law governing the derivative claims. As noted, the SLC employed independent counsel and independent financial experts.

Defendants' involvement was limited to responding to requests for information and participating in interviews. The SLC had full access to documents it requested, including those subject to a claim of attorney-client or attorney work product privilege. Current and former directors and officers, and many other company employees, appeared for interviews and provided additional documents. The SLC developed a database of more than 66 million pages of documents. It sought and received information directly from plaintiffs' counsel, and interviewed all named defendants, except McGuire and Lubben, who again declined.

After its investigation, the SLC concluded settlement was in the company's best interest. Accordingly, the SLC, along with plaintiffs' and defendants' counsel, participated in several months of mediation leading to a global settlement of all derivative claims. The SLC, thereafter, generated its 75–page report with exhibits, discussing its methodology in detail.

The SLC opted against explicitly reciting the facts supporting its conclusions concerning the merits of the company's claims against individual defendants. It concluded doing so would be contrary to the company's best interests and might reveal facts which might be used in other litigation against the company.

■ Minnesota's law does not compel the state and federal courts to inquire further into the SLC's findings. Under *Auerbach,* the corporation need only show "that the areas and subjects to be examined are reasonably complete and that there has been a good-faith pursuit of inquiry into such areas and subjects. What has been uncovered and the relative weight accorded in evaluating and balancing the several factors and considerations are beyond the scope of judicial concern." *Drilling,* 589 N.W.2d at 508, quoting *Auerbach,* 47 N.Y.2d at 634, 419 N.Y.S.2d 920, 393 N.E.2d at 1003. "[A]ny information regarding the committee's reasoning is not relevant to [the Courts'] review." *Drilling,* 589 N.W.2d at 510–11.

■ The Courts have considered whether the SLC's. investigation is adequate and appropriate absent testimony or a Fifth Amendment claim by McGuire and Lubben. The SLC acknowledged the difficulty in assessing McGuire's and Lubben's potential defenses caused by its lack of access to the individuals. *See* SLC Report at 59 n. 35, and 63 n. 42. This fact, however, is not fatal to the Courts' conclusion that the SLC's investigation was adequate and appropriate under the circumstances.

■ An SLC is not required to interview every possible witness in order to conduct a thorough and appropriate investigation. *See Drilling,* 589 N.W.2d at 510. While the conduct of McGuire and Lubben was undoubtedly central to the investigation, their testimony was not—because the SLC could, and did, obtain the information

by other means. McGuire, for example, as part of his settlement with the Securities and Exchange Commission ("SEC"), explicitly agreed he would not dispute the allegations in the SEC complaint. The Courts find the SEC settlement agreement is equivalent to an admission, upon which the SLC would have been entitled to rely.

■ Had this matter gone to trial, and if McGuire and Lubben declined to testify, the trier of fact would have been entitled to infer that their testimony would have been unfavorable. *See Cowens v. Siemens–Elema AB,* 837 F.2d 817, 825 (8th Cir.1988); *In re Marriage of Crockarell,* 631 N.W.2d 829, 833–34 (Minn.Ct.App. 2001), citing *Parker v. Hennepin County,* 285 N.W.2d 81, 82–83 (Minn.1979). Such an inference would support the conclusion that the allegations against both defendants may be true-the very conclusion the SLC reached.

The SLC's work is also in full accord with Federal Rule of Civil Procedure 23.1(c) and Minnesota Rule of Civil Procedure 23.09. The Federal Rule provides:

A derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval. Notice of a proposed settlement, voluntary dismissal or compromise must be given to shareholders or members in the manner that the court directs.

Fed.R.Civ.P. 23.1(c). In contrast to the rule governing class actions, which provides detailed procedures for approving a settlement, *see* Fed.R.Civ.P. 23(e)(1)-(5), the rule governing derivative actions merely requires that settlement be approved by the court after notice to shareholders.

Similarly, Minnesota Rule 23.09 provides in part:

The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed

dismissal or compromise shall be given to shareholders or members in such manner as the court directs.

Minn. R. Civ. P. 23.09.

Accordingly, the SLC's motion for preliminary approval is granted.

WHEREFORE, IT IS ORDERED THAT:

1. The settlement of these actions on the terms outlined in the proposed Notice to shareholders attached as Exhibit A is preliminarily approved. The Courts shall hold a final settlement approval hearing ("Final Hearing") on February 13, 2009, at 11:00 a.m., in Courtroom 14E of the United States Courthouse, 300 South 4th Street, Minneapolis, Minnesota 55415 to:

    a. Determine whether to finally approve the settlement and direct consummation of the settlement in accordance with its terms;

    b. Determine whether to enter judgment dismissing these actions with prejudice;

    c. Determine whether to grant the applications of plaintiffs' counsel for awards of attorneys' fees and expenses;

    d. Consider such other matters as may properly come before the Courts.

2. The Courts reserve the right to adjourn all or any part of the Final Hearing without further notice of any kind other than oral announcement at the hearing.

3. The Courts reserve the right to approve or reject the settlement at or after the Final Hearing without further notice.

4. The Courts approve, in form and content, the Notice of Proposed Settlement and Dismissal of Derivative Lawsuits, Joint Settlement Hearing and Right to Appear (the "Notice"), and find that the giving of notice as specified in this Order (i) meets the requirements of due process, Federal Rule of Civil Procedure 23.1(c), and Minnesota Rule of Civil Procedure 23.09; (ii) is the best notice practicable under the circumstances; and (iii) shall constitute due and sufficient notice to all persons and entities entitled to receive notice.

5. UnitedHealth shall, within 14 business days after the entry of this Order, cause Notice of the Final Hearing in substantially the form attached hereto as Exhibit A to be mailed by First Class U.S. Mail, postage pre-paid, to all record holders of UnitedHealth common stock as of the date of entry of this Order, at their last known address appearing in the stock transfer records maintained by or on behalf of UnitedHealth. All record holders who are not also the beneficial owners of the shares they hold are requested to forward the Notice to the beneficial owners. UnitedHealth shall use reasonable efforts to notify beneficial owners by (i) providing copies of the Notice to any record holder who, prior to the Final Hearing, requests copies to distribute to beneficial owners; or (ii) mailing the Notice to beneficial owners as identified, and requested, by record holders.

6. Plaintiffs' and defendants' counsel shall forthwith establish a website as stated in the Notice, and cause all material, pleadings, and orders in these cases to be posted thereon so that shareholders may access them.

7. Plaintiffs' counsel shall respond promptly to all calls directed to the toll free numbers given in the Notice.

8. Any shareholder may object to the settlement, the judgment, and/or plaintiffs' application for attorneys' fees and expenses, or otherwise request to be heard, in person or by counsel, concerning any matter properly before the Courts at the Final Hearing, provided, however, that no person or entity (other than counsel for the parties and the SLC) shall be heard, and no documents submitted will be con-

sidered unless the procedure outlined in the Notice is followed.

9. Plaintiffs' counsel shall, at least 14 days before the Final Hearing, submit their applications for fees and expenses to the Courts.

10. All parties who desire to submit further briefing to the Courts shall do so at least 14 days before the Final Hearing.

11. In the event the Courts disapprove the settlement or decline to enter final judgment, or the Courts' final approval is reversed or substantially modified on appeal, then the settlement agreement is null and void, except that the Company shall not be entitled to reimbursement of funds spent complying with paragraphs 5 and 6 of this Order. A disallowance or modification of the fees sought by plaintiffs' counsel shall not be considered a disallowance or modification of the settlement.

### EXHIBIT A–1

[PRINTED NOTICE WILL HAVE SPACE FOR SIDE–TO–SIDE CAPTIONS]

*NOTICE OF PROPOSED SETTLE-MENT OF DERIVATIVE LAW-SUITS, JOINT SETTLEMENT HEARING AND RIGHT TO AP-PEAR*

TO: ALL CURRENT RECORD AND BENEFICIAL OWNERS OF UNITED-HEALTH GROUP INCORPORATED COMMON STOCK

PLEASE READ THIS NOTICE CARE-FULLY AND IN ITS ENTIRETY.

### I. WHY ARE YOU RECEIVING THIS NOTICE?

The purpose of this Notice is to inform you of the proposed settlement (the "Settlements") and dismissal of two consolidated derivative lawsuits brought by shareholders on behalf of UnitedHealth Group, Incorporated ("UnitedHealth" or the "Company"). One lawsuit (the "Federal Lawsuit"), entitled *In re UnitedHealth Group Incorporated Shareholder Derivative Litigation*, Master File No. 06–cv–1216 JMR/FLN, is pending in the United States District Court for the District of Minnesota (the "Federal Court"). Another lawsuit (the "State Lawsuit"), entitled *In re UnitedHealth Group Incorporated Derivative Litigation*, Court File No. 27 CV 06–8085, is pending in the District Court of the State of Minnesota, Hennepin County, Fourth Judicial District (the "State Court"). The Federal Court and the State Court (together, the "Courts") have granted preliminary approval of the proposed settlement of the Federal Lawsuit and the State Lawsuit (together, the "Lawsuits") and ordered that this Notice be sent to UnitedHealth shareholders. The Lawsuits were brought by shareholders of UnitedHealth suing derivatively for the benefit of UnitedHealth to remedy alleged damages incurred by UnitedHealth as a result of alleged stock option "backdating" and other improper awards of stock options to certain UnitedHealth officers and directors.

**Please note that, since these are derivative actions brought by shareholders for the benefit of UnitedHealth, the Settlements provide benefits directly to UnitedHealth, not to shareholders. There are no payments to shareholders and there is no claim form to fill out.**

### II. BACKGROUND: WHAT ARE THESE LAWSUITS ABOUT?

THE FOLLOWING SHOULD NOT BE UNDERSTOOD AS AN EXPRESSION OF ANY OPINION OF THE COURT AS TO THE MERITS OF ANY OF THE PARTIES' CLAIMS OR DEFENSES.

Beginning on March 29, 2006, eleven derivative lawsuits were filed in the Feder-

al Court and three derivative lawsuits were filed in the State Court by United-Health shareholders asserting claims against certain of the Company's officers and directors arising from alleged stock option "backdating" and other alleged improper awards of stock options to certain UnitedHealth officers and directors.

On July 7, 2006, the Federal Court consolidated the eleven related lawsuits filed in the Federal Court into the single, consolidated Federal Lawsuit. Lead Plaintiffs Public Employees' Retirement System of Ohio, State Teachers' Retirement System of Ohio, St. Paul Teachers' Retirement Fund Association, Public Employees' Retirement System of Mississippi, Jacksonville Police & Fire Pension Fund, Louisiana Municipal Police Employees' Retirement System, Louisiana Sheriffs' Pension & Relief Fund, Fire & Police Pension Association of Colorado, Connecticut Retirement Plans and Trust Funds, and Jan Brandin then filed an Amended and Consolidated Verified Derivative Complaint on September 21, 2006, and that is the operative complaint in the Federal Lawsuit.

On July 20, 2006, the State Court consolidated the two related lawsuits filed in State Court into the single, consolidated State Lawsuit. Plaintiffs Natalie Gordon, Fred Greenberg and Evelyn Greenberg (collectively with the Lead Plaintiffs in the Federal Lawsuit, the "Plaintiffs") then filed a Consolidated Derivative Complaint on August 14, 2006, and that is the operative complaint in the State Lawsuit.

The defendants named in the Lawsuits are the members of the UnitedHealth Board of Directors at the time the Lawsuits were commenced (William W. McGuire, Stephen J. Hemsley, William C. Ballard, Jr., Richard T. Burke, James A. Johnson, Thomas H. Kean, Douglas W. Leatherdale, Mary O. Mundinger, Robert L. Ryan, Donna E. Shalala, William G. Spears and Gail R. Wilensky) and certain current and former officers of the Company who are not members of the Board of Directors (Travers H. Wills, David P. Koppe, Thomas P. McDonough, David J. Lubben, Jeannine M. Rivet, R. Channing Wheeler, Arnold H. Kaplan and Robert J. Sheehy) (collectively, the "Defendants").

The Lawsuits allege that, since at least 1996, UnitedHealth's Board of Directors permitted or otherwise engaged in a fraudulent scheme to grant stock options with strike prices based on the dates with the lowest closing share price of the year or at other relative low points or troughs throughout the relevant time period. UnitedHealth's Board of Directors also allegedly delegated to UnitedHealth's former Chairman and Chief Executive Officer, William W. McGuire ("McGuire"), the ability to unilaterally set the grant dates for his own UnitedHealth stock option grants and option grants to the other corporate officers, in violation of the stated terms of the Company's stock option plans. McGuire allegedly backdated option grants to dates on which the stock price was at an especially low point during the quarter or fiscal year, providing the recipients with in-the-money options carrying an immediate "paper profit." The Lawsuits alleged that, among other things, such conduct constituted a breach of the fiduciary duties owed to the Company by its officers and directors under Minnesota law and also (as alleged in the Federal Lawsuit only) violated certain provisions of the federal securities laws. Defendants deny these allegations.

On June 26, 2006, UnitedHealth's Board of Directors appointed a Special Litigation Committee (the "SLC") pursuant to Section 302A.241 of the Minnesota Statutes, to investigate the claims raised in the Lawsuits and to analyze the legal rights or remedies of the Company and determine

whether those rights or remedies should be pursued. The Board of Directors appointed former Minnesota Supreme Court Chief Justice Kathleen Blatz and former Minnesota Supreme Court Justice Edward Stringer as the two members of the SLC.

## III. HOW WERE THE SETTLEMENTS REACHED?

In June 2007, the parties agreed to mediate the Lawsuits, with the assistance of former United States District Court Judge Layn R. Phillips, an experienced and independent mediator. The SLC agreed to participate in the mediation along with other parties. Numerous mediation sessions were held. On December 5, 2007, as a direct result of the mediation, the SLC, Plaintiffs, and certain Defendants agreed to settle the Lawsuits on the terms described below. On December 6, 2007, the SLC issued its report (the "SLC Report"), which determined, among other things, that settlements with Defendants McGuire, David J. Lubben ("Lubben"), William G. Spears ("Spears") and other remediation that occurred in parallel with the mediated settlements were in the best interests of the Company. Counsel for Plaintiffs participated in the negotiations leading to the mediated settlements and other remediation and have approved them.

## IV. WHAT ARE THE TERMS OF THE SETTLEMENTS?

Among other things, the Settlements provide that in consideration for the full settlement and dismissal with prejudice of the Lawsuits and the releases described herein, Defendants McGuire, Lubben, and Spears, and additional UnitedHealth executives, have agreed to the following: **NOTE that the values stated below were as of December 6, 2007 and that these values fluctuate with the price of UnitedHealth common stock.**

### McGuire's Settlement Contributions

Following the initiation of the Lawsuits, McGuire agreed in 2006 to the re-pricing of certain UnitedHealth stock options. The value to the Company of these option re-pricings was approximately $181.0 million to $198.8 million. Additionally, pursuant to the mediated settlement of the Lawsuits, McGuire has also agreed to (i) surrender to the Company all right, title and interest in stock options on 9,223,360 shares of Company stock; (ii) surrender to the Company any and all rights he has under the Company's Supplemental Executive Retirement Plan; (iii) surrender to the Company his rights to $8.1 million of the funds in his Executive Savings Plan Account; and (iv) relinquish any claim for post-employment benefits, such as the use of Company airplanes, office, secretarial and administrative support and Company-paid life and health insurance. When added to the value of the re-priced options in 2006, the total value of rights relinquished by McGuire was approximately $602.3 million to $618.5 million as of December 6, 2007.

### Lubben's Settlement Contributions

Following the initiation of the Lawsuits, Lubben agreed in 2006 to the repricing of certain options. The economic value relinquished by Lubben from the repricing of these options is approximately $2.6 million to $3.6 million. Additionally, pursuant to the mediated settlement of the Lawsuits, Lubben has agreed, among other things, to (i) repay to the Company $20.55 million of the compensation he realized in 2007 from the exercise of options; (ii) relinquish rights to severance benefits in the amount of $1.95 million; and (iii) surrender to the Company all right, title and interest in stock options on 273,000 shares of Company stock. The total economic value relin-

quished by Lubben under the Lubben Agreement is between approximately $25.4 million to $28.0 million. When added to the value of the re-priced options in 2006, the total value of rights relinquished by Lubben is approximately $29.0 million to $30.7 million as of December 6, 2007.

### Spears's Settlement Contribution

Mr. Spears agreed to participate in binding arbitration to determine the fair value of the claims against him. This arbitration resulted in an award valued at $7.25 million.

### Additional Remediation

In 2006, after the Lawsuits were filed, thirteen other UnitedHealth executives (including named defendants Hemsley, Sheehy, and Rivet) voluntarily agreed to reprice certain UnitedHealth stock options and provided other remediation with a value ranging between $204.9 million and $225.2 million, with Hemsley contributing between approximately $177.5 million (Black Scholes) or $189.1 million (intrinsic) of that value. In 2007, Hemsley took further steps to remediate the Company's past practices relating to stock option grants by increasing the exercise price on other outstanding options resulting in $50 million of additional value on an intrinsic value basis.

### Corporate Governance Reforms

Following the initiation of the Lawsuits and at the urging of Plaintiffs, the Board of Directors and management of the Company began to institute a series of corporate governance reforms aimed at strengthening the Company's stock option policies and practices, as well as other compensation and corporate governance policies and practices. During the course of the mediation, Plaintiffs provided the Company with a series of additional corporate governance proposals, which they urged the Company and its Board of Directors to adopt. UnitedHealth agreed to implement many of the proposed changes.

## V. WHAT IS THE TOTAL MONETARY VALUE OF THE SETTLEMENTS AND OTHER REMEDIATION?

According to the values in the SLC Report, the total monetary value of the actions taken by McGuire, Lubben, other UnitedHealth executives, and Spears, all of which resulted from the Lawsuits, is approximately $895 million (intrinsic) to $930 million (Black Scholes) as of December 6, 2007, of which $388.6 million (Black Scholes) or $427.6 million (intrinsic) resulted from voluntary actions taken in 2006, and $499.3 million (Black Scholes) or $495.1 million (intrinsic) resulted from 2007 settlements. **Because the Settlements involve the cancellation, relinquishment and repricing of UnitedHealth stock options, the value of the Settlements change as the value of UnitedHealth common stock changes.**

As of December 18, 2008, because of fluctuations in the price of UnitedHealth stock, the value of the Settlements was $266.4 million (intrinsic).

## VI. WHAT CLAIMS WILL THE SETTLEMENTS AND DISMISSAL RELEASE?

If the Courts approve the Settlements, Plaintiffs will dismiss the Lawsuits, and UnitedHealth shall release any and all claims that have been asserted derivatively on behalf of UnitedHealth in the Lawsuits.

## VII. WHAT ARE THE REASONS FOR THE SETTLEMENTS AND DISMISSAL?

Plaintiffs, through their counsel and acting with the SLC and its counsel, have conducted an extensive investigation of the claims asserted in the Lawsuits.

Based upon their investigation, and their legal and factual analysis of the claims and defenses and the law applicable thereto, the need to act in the best interests of UnitedHealth and the substantial benefits conferred upon UnitedHealth by the Settlement, Plaintiffs and Plaintiffs' counsel believe that the Settlement is in the best interests of UnitedHealth and its shareholders and should be approved.

The Defendants have denied and continue to deny all allegations of wrongdoing in the Lawsuits. The Settlements are not and shall not be construed or be deemed to be evidence of any admission or a concession on the part of Defendants of any fault or liability or damages whatsoever.

## VIII.  WHEN WILL THE FINAL SETTLEMENT APPROVAL HEARING TAKE PLACE?

The Courts have scheduled a hearing (the "Final Settlement Approval Hearing"), to be held jointly by the Courts on February 13, 2009, at 11:00 a.m. at the United States Courthouse, 300 S. 4th Street, Courtroom 14E, Minneapolis, Minnesota, 55415.

The Courts have reserved the right to adjourn the Final Settlement Approval Hearing or any part thereof, without further notice of any kind other than oral announcement at the hearing or any adjournment thereof.

## IX.  WHAT WILL HAPPEN AT THE FINAL SETTLEMENT APPROVAL HEARING?

At the Final Settlement Approval Hearing, Plaintiffs will ask the Court to:

- Approve the Settlement and direct consummation of the Settlement in accordance with their terms;
- Enter judgment dismissing the Lawsuits with prejudice and extinguish and release all released claims;
- If the Courts approve the Settlements, grant the applications of Plaintiffs' counsel for an award of attorneys' fees and reimbursement of expenses; and
- Consider any other matters as may properly come before the Courts and reserve jurisdiction over implementation of the Settlement until each and every act agreed to be performed by the parties shall have been performed.

The Courts have also reserved the right to approve or reject the Settlement, to enter the Orders and Final Judgments, and to order the payment of attorneys' fees and expenses without further notice of any kind.

## X.  DO YOU HAVE A RIGHT TO APPEAR AND COMMENT?

Any shareholder of the Company who objects to: (1) the Settlements; (2) the dismissal of the Lawsuits; (3) the proposed Orders and Final Judgments to be entered with respect to the dismissal of the Lawsuits; and/or (4) Plaintiffs' counsel's application for an award of attorneys' fees and expenses, or who otherwise wishes to be heard, may appear in person or by their attorney at the Final Settlement Approval Hearing. If you wish to do so, however, you must take certain actions.

To object or otherwise be heard in connection with the Federal Lawsuit, you must, not later than twenty-one (21) days prior to the Settlement Hearing, send a letter to UNH Federal Derivative Litigation, 3700 Campbell Mithun Tower, 222 South Ninth Street, Minneapolis, Minnesota 55402.

To object or otherwise be heard in connection with the State Lawsuit, you must, not later than twenty-one (21) business days prior to the Settlement Hearing, send a letter to UNH State Derivative Litiga-

tion, 333 South Seventh Street, Suite 1140, Minneapolis, Minnesota 55402–2422.

Your letter must contain:

(1) a written notice of your intention to appear, which identifies your name, address, and telephone number, and, if represented by an attorney in connection with your objection, the name, address, and telephone number of your attorney;

(2) the number of shares of United-Health common stock you own and a written statement that you certify that you are a shareholder of UnitedHealth or otherwise provide proof of your ownership of UnitedHealth common stock;

(3) a detailed written statement of your specific objections to the Settlement, Plaintiffs' counsel's application for attorneys' fees and expenses, or any other matter before the Court;

(4) the bases for your objection or the reasons you desire to appear and be heard;

(5) all documents or other materials you desire the Courts to consider; and

(6) a representation as to whether you, or your attorney, intends to appear at the hearing.

Your letter will be filed with the Federal Court and/or the State Court, as appropriate, and be shared with counsel for all parties.

Any UnitedHealth shareholder who does not seek to object to, or otherwise comment on, the Settlements, the dismissal of the Lawsuits, the proposed Orders and Final Judgments to be entered with respect to the dismissal of the Lawsuits, and/or Plaintiffs' counsel's application for an award of attorneys' fees and expenses need not take any action.

Unless the Courts otherwise direct, no person or entity will be entitled to object to the Settlements, the dismissal of the Lawsuits, the proposed Orders and Final Judgments to be entered with respect to the dismissal of the Lawsuits and/or Plaintiffs' counsel's application for an award of attorneys' fees and expenses, or otherwise to be heard, except by serving and filing written objections as prescribed above.

Any person or entity who fails to object or otherwise request to be heard in the manner prescribed above will be deemed to have waived the right to object or otherwise request to be heard (including the right to appeal) and will be barred forever from raising such objection or request to be heard in this or any other action or proceeding.

## XI. HOW WILL THE PLAINTIFFS' ATTORNEYS GET PAID?

If the Courts approve the Settlements, counsel for the plaintiffs in the Federal Lawsuit intend to ask the Federal Court for a reasonable award of attorneys' fees and expenses in an amount not to exceed $47 million, and counsel for plaintiffs in the State Lawsuit intend to ask the State Court for a reasonable award of attorneys' fees and expenses in an amount not to exceed $17 million (collectively, the "Fee Applications"). Defendants have reserved all rights to oppose the Fee Applications. Any fees and expenses awarded by the Courts to Plaintiffs' counsel in the Lawsuits will be paid by UnitedHealth from the Settlements' proceeds. Final resolution by the Courts of the Fee Applications shall not be a precondition to the dismissal of the Lawsuits, and the Fee Applications may be considered separately from the proposed Settlements and dismissal.

## XII. HOW DO YOU GET ADDITIONAL INFORMATION ABOUT THE SETTLEMENTS?

This Notice contains only a summary of the Lawsuits and the terms of the Settle-

ments and is not all-inclusive. The references in this Notice to the pleadings in the Lawsuits and other papers and proceedings are only summaries and are not and do not purport to be complete or comprehensive. More details regarding the claims that have been asserted by the parties and the terms and conditions of the Settlements, including related Orders and proposed forms of Orders, are available at the website www._____.

Inquiries regarding the Federal Lawsuit may also be sent to UNH Federal Derivative Litigation, 3700 Campbell Mithun Tower, 222 South Ninth Street, Minneapolis, Minnesota 55402, or you may call 1–800–287–8119.

Inquiries regarding the State Lawsuit may also be sent to UNH State Derivative Litigation, 333 South Seventh Street, Suite 1140, Minneapolis, Minnesota 55402–2422, or you may call 1–877–247–4292.

**PLEASE DO NOT CALL THE COURT.**

### XIII. NOTICE TO PERSONS OR ENTITIES HOLDING OWNERSHIP ON BEHALF OF OTHERS

Brokerage firms, banks and/or other persons or entities who hold shares of UnitedHealth common stock for the benefit of others are requested to immediately send this Notice to all of their respective beneficial owners. If additional copies of the Notice are needed for forwarding to such beneficial owners, any requests for such additional copies or provision of a list of names and mailing addresses of beneficial owners may be made to:

[INSERT ADDRESS PER DEFTS]

Such brokerage firms, banks and/or other persons or entities requesting additional copies or providing a list of names and mailing addresses of beneficial owners will be reimbursed for documented reasonable out-of-pocket expenses incurred in providing such additional copies or providing a list of names and mailing addresses of beneficial owners.

Dated: _____, 2008

BY ORDERS OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA AND THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT, STATE OF MINNESOTA, HENNEPIN COUNTY